Glen J. BUOY, and Corrine Buoy, Appellants, Cross–Appellees,

v.

ERA HELICOPTERS, INC., Appellee, Cross–Appellant.

Nos. S–2296, S–2319.

Supreme Court of Alaska.

March 31, 1989.

David A. Devine, Robinson, Devine & Holliday, Anchorage, for appellants/cross-appellees.

Clark Reed Nichols and James Leik, Perkins Coie, Anchorage, for appellee/cross-appellant.

Before MATTHEWS, C.J., RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

RABINOWITZ, Justice.

## I. INTRODUCTION.

This appeal and cross-appeal stem from injuries Glen J. Buoy sustained in a helicopter crash. The superior court held two trials on claims Buoy and his wife asserted against ERA Helicopters, Inc. (ERA). The Buoys appeal from the superior court's refusal to grant a third trial, and also challenge the superior court's award of attorney's fees to ERA. In its cross-appeal, ERA claims that the superior court erred in granting the Buoys' first request for a new trial.

## II. FACTS AND PRIOR PROCEEDINGS.

On July 11, 1983, a helicopter owned and operated by ERA crashed near Dutch Harbor, Alaska. Glen Buoy, a passenger in the helicopter, sustained leg injuries as a result of the accident. Buoy and his wife subsequently filed suit against ERA. The Buoys later amended their complaint to include two helicopter component manufacturers as defendants. Prior to trial, the Buoys settled with the helicopter component manufacturers. However, the Buoys rejected ERA's settlement offers and the case proceeded to trial.

After a four-week trial, the jury found ERA liable for Glen Buoy's injury. It awarded him $16,187 for past medical expenses and $48,416 for past wage loss. However, the jury denied any awards for future medical expenses, impairment of future earning capacity, pain and suffering, or loss of enjoyment of life. The jury also denied Corrine Buoy any award for loss of consortium. The Buoys filed a motion for a new trial on the issue of damages, arguing that the jury's verdict was inadequate. The superior court granted a new trial on all issues and subsequently denied ERA's motion to reconsider. This court denied ERA's petition to review the superior court's order granting a new trial.

Prior to the second trial, ERA agreed not to contest liability in exchange for the Buoys' agreement not to seek punitive damages. During trial on the issue of the Buoys' compensatory damages, a witness for the Buoys testified that Glen Buoy suffered from "psychological problems" caused in part by his injuries and in part by the "whole litigation process." In his cross-examination of the witness, ERA's attorney asked questions along the line of whether "the jury verdict rendered in the first trial was far below [Glen Buoy's] expectations," and whether Buoy was "disappointed" with the outcome of the first trial. At the trial's conclusion, the jury awarded Glen Buoy $20,243 for past medical expenses, $36,433 in lost wages, $10,000 for impairment of future earning capacity, and $75,000 for pain and suffering, for a total award of $141,676. The jury declined to award Buoy damages for future medical expenses or loss of enjoyment of life, and also denied Corrine Buoy any award for loss of consortium. The superior court subsequently denied the Buoys' motion for a new trial.

The superior court subtracted the principal amount of the Buoys' settlements with the helicopter component manufacturers from the jury's award, resulting in Glen Buoy not recovering any damages from ERA. Based on Glen Buoy's failure to recover damages from ERA, the superior court determined that ERA had "prevailed" at trial. Pursuant to Civil Rule 82 the court awarded ERA $40,000 in attorney's

fees against Buoy as well as $44,699 against Buoy for costs under Civil Rule 79. The superior court also awarded ERA $10,000 in Civil Rule 82 attorney's fees against Corrine Buoy.

In their appeal, the Buoys contend the superior court erred by 1) determining that ERA was the prevailing party and awarding attorney's fees against Glen Buoy; 2) permitting ERA to introduce evidence that Glen Buoy's depression was worsened or lengthened by the litigation process; 3) giving improper instructions on causation to the jury; 4) allowing ERA to mention the first trial in cross-examining one of the Buoys' witnesses; and 5) refusing to again grant a new trial due to the second jury's inadequate award of damages.

ERA filed a cross-appeal, arguing that the superior court erred by granting the Buoys' motion for a new trial in regard to the first trial.

### III. DID THE SUPERIOR COURT ERR BY GRANTING THE BUOYS' MOTION FOR A SECOND TRIAL?

In its cross-appeal, ERA contends that the superior court erred by granting the Buoys' motion for a new trial at the conclusion of the first trial. There the jury found ERA liable for Glen Buoy's leg injury and awarded him damages for past medical expenses and past wage loss. However, the jury declined to compensate Glen Buoy for future medical costs, impairment of future earning capacity, pain and suffering, or loss of enjoyment of life, and also denied Corrine Buoy any award for loss of consortium. The Buoys subsequently moved for a new trial on the ground that, based on the evidence presented at trial, "the jury's award of damages is so inadequate as to demonstrate that the jury did not follow the law or that the award was the result of passion and prejudice or compromise." The superior court granted their motion.

ERA contends that the superior court granted the Buoys a new trial due to the jury's failure to award Glen Buoy damages for pain and suffering. ERA contends the lack of an award for pain and suffering is inconsistent with the jury's determination of liability, but maintains the Buoys waived any objections to this inconsistent verdict by not voicing opposition to the jury's findings prior to the jury's discharge.[1] ERA reasons that since the Buoys waived their objections to the verdict, the superior court erred by granting their motion for a new trial.

We conclude that ERA's argument is without merit. The grant or refusal of a motion for a new trial rests in the sound discretion of the trial court, and we will not disturb a trial court's decision on such a motion except in exceptional circumstances to prevent a miscarriage of justice. *Montgomery Ward v. Thomas*, 394 P.2d 774, 774–75 (Alaska 1964). Contrary to ERA's arguments, the superior court did not base its order granting the Buoys a new trial solely on the jury's failure to award damages for pain and suffering or because the jury's damage findings were inconsistent. The superior court explicitly found that the jury's verdict on Corrine Buoy's loss of consortium claim was "inadequate," and noted that *all* damage verdicts including the loss of consortium verdict are the result of an irrational and unjust determinative process." (Emphasis added.) The superior court went on to conclude that the interest of justice required a new trial.[2] Our review of the record persuades us that exceptional circumstances have not been demonstrated which would require us to overrule the superior court's discretionary grant of a new trial. The superior court acted within its discretion in concluding that the inade-

---

1. Challenges to the consistency of a verdict are deemed waived unless made prior to discharge of the jury. *City of Fairbanks v. Smith,* 525 P.2d 1095, 1097–98 (Alaska 1974); *Nordin Constr. Co. v. City of Nome,* 489 P.2d 455, 472 (Alaska 1971); *City of Homer v. Land's End Marine,* 459 P.2d 475, 480 (Alaska 1969).

2. Alaska R.Civ.P. 59(a) provides in part:

   A new trial may be granted to all or any of the parties and on all or part of the issues in an action in which there has been a trial by jury ... if required in the interest of justice.

quacy of the damages warranted the grant of a new trial.

## IV. DID THE SUPERIOR COURT ERR BY PERMITTING ERA TO QUESTION WITNESSES ABOUT THE FIRST TRIAL?

■ During the course of his direct examination Dr. Green, a psychologist, referred to Glen Buoy's stress from the accident and litigation. During cross-examination of Dr. Green, counsel for ERA alluded several times to the first trial which was held in this case. At various points in his cross-examination counsel inquired whether Glen Buoy's disappointment over the first jury's verdict affected his mental state.[3] The Buoy's claim the superior court erred in allowing this line of questions.[4] We hold that the superior court did not abuse its discretion in permitting counsel for ERA to cross-examine Buoy's expert as to whether the verdict in the first trial affected Buoy's mental condition.

In his re-direct examination of Dr. Green, the Buoys' own attorney attempted to establish that Buoy's clinical depression was not attributable to the litigation:

Q: But, Doctor, aren't the lawyers asking the questions and the psychologists seeing him and giving tests, isn't that —isn't that really affecting him from getting well?

A: No, that's not affecting his depression. . . .

Dr. Green also testified on redirect as follows:

I guess it appears to me that you're trying to say, I think, from all of this, that the litigation is what's caused Mr. Buoy's problem. And I don't think that is the case at all. Mr. Buoy was depressed before the—the whole thing happened, and what has occurred is his depression has followed what I think is an extremely predictable typical course of somebody who has a post-traumatic depression. The initial focus is on all of physical difficulties. Once that's over the depression starts to emerge. Typically in these kind of situations where there is litigation involved, if the litigation plays any role at all, what happens is is it shifts the focus away from his depression temporarily, but it doesn't—it doesn't change it, the depression is still there. . . .

Following Dr. Green's testimony on re-direct examination, counsel for the Buoys objected to ERA's proposed re-cross-examination of Dr. Green. In response, the superior court ruled as follows:

THE COURT: Well, Counsel, sometimes what you do in a trial sticks you, and what you've done in trial just stuck you. You're going to get a full cross-examination on this issue, and I—and I did my best to make sure that incendiary issues were kept out of this trial. You opened it wide open. I can't expect this doctor to understand doctrines of admissibility, I expect it from the lawyers. You opened it wide open, and you're going to get the cross-examination. . . . It

---

**3.** The following questions were propounded to Dr. Green:

Q: Is it your understanding that the jury verdict rendered in the first trial was far below his [Buoy's] expectations?

. . . .

Q: And you're not relating his increased depression following the first trial to any disappointment that he might have at the first trial?

. . . .

Q: You're saying that in the year in which you were counseling Mr. Buoy . . . following the first trial that you didn't address with him the question of what he had claimed at the first trial and to what extent he was disappointed by the first jury verdict?

. . . .

Q: And so you would not have any basis from which to determine to what extent his

present depression is attributable to, I'll call it dashed expectations about the first jury?

The Buoys' attorney did not object to these questions at the time they were asked. However, during a voir dire examination outside the jury's presence in the middle of ERA's re-cross-examination, counsel for the Buoys clearly objected to any mention of a verdict in the first trial. The court then told the attorneys that he would allow questions dealing with whether Buoy's perception of the verdict affected the expert's opinion.

**4.** The applicable standard of review of a trial court's evidentiary rulings is that of abuse of discretion. *State Mechanical, Inc. v. Liquid Air, Inc.,* 665 P.2d 15, 22 (Alaska 1983).

seems to me the issue of Mr. Buoy's expectations being dashed in the first trial because the jury came in low may be a legitimate subject of cross-examination. . . .

In our view this ruling does not constitute an abuse of discretion. As the superior court recognized, one of the central issues at trial was whether the helicopter accident was a substantial factor in causing Glen Buoy's depression. The Buoys introduced evidence that the crash led to Glen Buoy's mental condition, as well as evidence that the litigation did not cause or worsen his depression. However, the verdict rendered by the first jury was clearly less than Buoy had hoped for. Therefore, ERA was entitled to test the weight of Dr. Green's assertion that the litigation did not affect Buoy's mental condition by inquiring into whether Buoy's disappointment in the first jury's verdict deepened his depression. To counter any potentially prejudicial tendencies of this line of questioning, the superior court specifically instructed the jury to consider evidence concerning the first trial only for the purpose of determining what effect, if any, the first trial had on Buoy's psychological condition.

## V. DID THE SUPERIOR COURT IMPROPERLY INSTRUCT THE JURY ON CAUSATION?

■ At the conclusion of the second trial, the superior court instructed the jury in part as follows:

> In the instructions that follow you will be asked to determine if particular items of loss claimed by the Plaintiffs were legally caused by the helicopter accident involved in this case.
>
> Legal cause exists where the accident was more likely than not a substantial factor in bringing about an injury or loss. Legal cause is not demonstrated by the mere fact that an injury or loss has occurred.
>
> For the helicopter accident to be a substantial factor in bringing about an injury or loss the evidence most prove that it is more likely than not that: (1) the injury or loss would not have occurred but for the helicopter accident, and (2) the accident was so important in bringing about the injury or loss that reasonable men would regard it as a cause and attach responsibility to it.

In addition to this causation instruction the superior court gave the following instruction concerning Glen Buoy's claim for damages resulting from his depressed mental condition.

> A person is never liable where he has done no more than insist on his legal rights in a permissible way. You may not penalize either party for asserting its rights in litigation.
>
> You have heard evidence concerning the effect that the accident may or may not have had on Mr. Buoy's mental condition. In considering whether the accident was a substantial factor in bringing about any mental condition such as stress, anxiety or depression, you must consider whether the accident was a substantial factor in bringing about only a portion of Mr. Buoy's stress, anxiety or depression. You may award damages against ERA Helicopters only to the extent that the accident was a substantial factor in bringing about such portion of the mental condition.
>
> You may award damages for any of Mr. Buoy's mental or emotional suffering that you find was more likely than not caused by the helicopter accident; you may not award any damages for any mental or emotional suffering which was not more likely than not caused by the accident.[5]

---

5. Instruction No. 23 reads:

It is the duty of any person who has been injured to use reasonable diligence and reasonable means under the circumstances to mitigate his damages.

Glen Buoy is not entitled to be paid for any loss he could have minimized or avoided with reasonable efforts (and without having to give up a legal right or without incurring undue risk, hardship, or embarrassment) even though the loss originally resulted from an accident for which the defendant is legally responsible. If you decide that it is more likely than not that Plaintiff could have minimized or avoided any loss with reasonable efforts, you may not require the Defendant to

The Buoys argue that the superior court erred in giving this causation instruction in combination with the above quoted instruction on stress. They contend that the trial court should have given the following "multiple cause" instruction: "[I]f *a* cause of Buoy's depression was the helicopter crash, then that is sufficient for an award of damages. It is not necessary that the crash be the one and only cause of BUOY's depression...." (Emphasis in original.) In short the Buoys argue that the superior court should have instructed the jury that there can be more than one legal (or proximate cause) of an injury.

In a related contention, the Buoys maintain that the "but for" causation instruction given by the court enabled ERA to argue that Glen Buoy's depression was not compensable to the extent that it was worsened or prolonged by the litigation process. The Buoys argue that ERA should be liable for Glen Buoy's damages even to the extent those damages were increased by Buoy's litigation-induced depression because litigation was a "natural consequence" of the helicopter crash.

We think it would have been preferable for the trial court to have explicitly instructed the jury that there can be more than one legal (or proximate) cause of an injury. Nevertheless, we conclude that the superior court did not err in giving the questioned instructions or in refusing to give the requested instruction. Here the court's proximate cause instruction did not imply that there could be only one legal (or proximate) cause of an injury or mental condition. Nothing in the court's instructions precluded the jury from awarding damages for the prolongation of Glen Buoy's depression if it determined that the crash of the helicopter was a substantial factor in causing this injury.

■ The Buoys also imply that the superior court infringed on their right to pursue legal claims against ERA by permitting

ERA to argue that it was not liable for psychological injuries Buoy suffered as a result of litigation. The Buoys argue that to avoid litigation-caused depression, Glen Buoy would have had to abandon his legal claims against ERA. However, as we noted earlier, the superior court instructed the jury that it could not penalize either party for asserting its legal rights. Furthermore, ERA never suggested to the jury that the Buoys should not have litigated their claims. In linking Glen Buoy's depression to the litigation process, ERA attempted to establish that the helicopter crash was not a substantial factor in bringing about Buoy's mental condition. Given the foregoing, we conclude the superior court did not infringe upon the Buoys' right to litigate their claims when it permitted ERA to argue that it was not liable for Buoy's litigation-induced depression.

## VI. DID THE SUPERIOR COURT ERR IN REFUSING TO GRANT THE BUOYS' MOTIONS FOR A THIRD TRIAL?

In *Hayes v. Xerox Corporation*, 718 P.2d 929 (Alaska 1986), we articulated the applicable standard of review regarding denials of motions for a new trial as follows:

> The decision to grant or deny a new trial is within the trial court's discretion. If there is an evidentiary basis for the jury's decision, the denial of a new trial must be affirmed. However, if the evidence supporting the verdict was completely lacking or so slight and unconvincing as to make the verdict plainly unreasonable and unjust, then we must reverse the denial of a motion for a new trial. In reviewing such denials, we must view the evidence in the light most favorable to the non-moving party.

*Id.* at 933 (citations omitted).[6]

### A. *Corrine Buoy's Claim.*

■ The Buoys contend that the second jury's refusal to award Corrine Buoy any

---

pay the amount Plaintiff could have reasonably avoided.

6. This court will not interfere with a trial court's ruling on a motion for new trial "'except in the most exceptional circumstances and to prevent

a miscarriage of justice.'" *Exxon Corp. v. Alvey*, 690 P.2d 733, 741 (Alaska 1984) (quoting *International Bhd. of Teamsters v. King*, 572 P.2d 1168, 1178 (Alaska 1977)).

damages for loss of consortium has no reasonable evidentiary basis. They therefore argue the superior court abused its discretion in denying Corrine Buoy's motion for a new trial.

Viewing the evidence in the light most favorable to ERA, we hold that the evidence supporting the verdict on Corrine Buoy's claim was not so lacking as to make the verdict plainly unjust. There was evidence that Glen Buoy's physical injuries were not particularly restricting. Within six weeks of the crash he was at home and getting around on crutches. Two or three months later he could drive a car, and within six months of the accident he began walking with a cane. The Buoys often took vacation trips or trips to visit family after the accident. Moreover, the jury could have concluded that the injury to Glen Buoy's leg did not impair his relationship with his wife because Buoy already was suffering from a host of physical ailments at the time of the accident.

With regard to Glen Buoy's mental condition, there was evidence that his depression adversely affected his relationship with his wife. An expert witness called by the Buoys testified that the Buoys' sex life became practically non-existent after the accident and that "Mrs. Buoy had more of a boarder than a husband at this point." Corrine Buoy testified that her husband "would lash out at me" and that "it wasn't the marriage as I remember what it was before the accident." However, Corrine Buoy admitted she had not sought any marriage counseling or done any reading to attempt to strengthen her marriage. Additionally, the cause of Buoy's depression was disputed. ERA introduced evidence that a number of factors other than the injury Buoy suffered in the helicopter accident could have precipitated or worsened his mental condition. The jury thus could have concluded that problems between the Buoys resulting from Glen Buoy's depression were not attributable to the injury Glen Buoy suffered in the crash.[7] We therefore conclude that the superior court did not abuse its discretion by refusing to grant a new trial on Corrine Buoy's loss of consortium claim.

### B. Glen Buoy's Claims.

The Buoys argue that the superior court also abused its discretion by refusing to grant Glen Buoy's motion for a new trial. This contention is based on alleged defects in the jury's awards for past and future wage losses, as well as in the jury's refusal to award Glen Buoy damages for future medical expenses and loss of enjoyment of life.

The Buoys maintain that the jury's verdict regarding Glen Buoy's past and fu-

---

7. The Buoys point out that the jury awarded Glen Buoy damages for all of his psychological treatment up to the date of the second trial. They therefore argue that the jury necessarily determined that the crash caused Buoy's depression, and thus that there was no lawful basis for the jury to refuse to compensate Corrine Buoy. While this line of reasoning may have some merit, it is based on the premise that the jury's failure to award damages to Corrine Buoy is inconsistent with the jury's award of damages for the cost of Glen Buoy's psychological treatment. Challenges to the consistency of a verdict are deemed waived unless made prior to discharge of the jury. *City of Homer v. Land's End Marine*, 459 P.2d 475, 480 (Alaska 1969). When asked by the court whether there was any reason the jury should not be discharged, the Buoy's attorney replied:

Your Honor, so that there's no argument made that we waived any arguments, we believe that on the evidence presented, especially in the area of loss of enjoyment of life and loss of consortium, that a zero was not warranted by the evidence. And in fact earlier—on the earlier motion for new trial, you had noted that loss—an award of zero for loss of consortium couldn't be substantiated on the evidence.

. . . .

The only reason I bring that up is an argument was made the last time that this was something that had to be brought up prior to discharging the jury. So we're raising it at this time. And I guess that the jury should be advised that, based on the evidence and the instructions, they should award something for loss of enjoyment of life and loss of consortium.

In our view, this statement was insufficient to raise a question concerning the verdict's internal consistency. As the superior court noted in response, questions about whether the evidence supports the verdict should be addressed through post-trial motions. The Buoys therefore waived the issue of the verdict's consistency.

ture expenses for psychological care is inconsistent. They argue that the jury's award of all past medical expenses for psychological care demonstrates that the jury held ERA responsible for Buoy's depression. Since even expert witnesses for the defense agreed that Buoy's depression would require future treatment, the Buoys contend that it was inconsistent for the jury to refuse to award damages for future medical care. While this position may have merit, we hold that the Buoys waived arguments as to the verdict's internal consistency by failing to voice such objections prior to the jury's dismissal.[8]

Likewise, we reject the Buoys' arguments concerning the lack of consistency between the jury's awards for past and future wage losses. The Buoys note that the jury awarded damages for past wage loss consistent with wage losses through the date Glen Buoy completed orthopedic treatment. However, the jury also awarded Buoy $10,000 for impairment of future earning capacity. The Buoys contend that if the jury found impairment of future earning capacity, it was inconsistent for the jury to refuse to award Buoy any compensation for past wages lost between the date Buoy completed orthopedic treatment and the date of trial.[9] However, as previously discussed, the Buoys waived any argument over the verdict's consistency.

■ The Buoys also contend the jury's $10,000 award for impairment of future earning capacity is "grossly inadequate." In our view the evidence supporting this verdict was not so completely lacking as to make the jury's award unjust. There was evidence that Glen Buoy's employment prospects were limited. According to testimony, Buoy has expertise as a driller in an industry (mineral extraction) that was suffering from unfavorable economic conditions at the time of trial. Buoy also suffered from several physical ailments which pre-dated the accident; the jury could have

concluded these ailments limited his future earning capacity as well. Additionally, there was evidence that Buoy's depression was treatable in a relatively short time frame. Finally, the Buoys fail to cite specific evidence suggesting that Glen Buoy's future earning potential was in fact severely impaired by the accident.

■ Lastly, the Buoys argue that under no conceivable circumstances could the jury fairly award Glen Buoy nothing for loss of enjoyment of life. They assert, without evidentiary support, that "[i]t cannot be disputed that a clinically-depressed individual loses his ability to enjoy life." However, since the cause of Buoy's depression was disputed, the jury could have concluded that the helicopter crash was not a substantial factor in precipitating Buoy's depression. Moreover, although the Buoys emphasize Glen Buoy's social withdrawal as an indication of his loss of enjoyment of life, there is evidence that he and his wife did not do a great deal of socializing before the accident. There is also evidence that the Buoys took vacations and often visited family after the accident. Finally, there is evidence that Glen Buoy participated in activities around the house and in the yard.

For the reasons cited above, we hold that the superior court did not abuse its discretion by denying Glen Buoy's motion for a new trial.

## VII. DID THE SUPERIOR COURT ERR BY AWARDING RULE 82 ATTORNEY'S FEES AGAINST GLEN BUOY?

■ The Buoys contend that the superior court erred as a matter of law by determining that ERA was the "prevailing party" with respect to Glen Buoy's claims.[10] They argue that they prevailed as a matter of law because they ultimately succeeded in establishing ERA's liability for Glen

---

**8.** *See supra* note 7.

**9.** Buoy ceased treatment for his leg injury on or about August 10, 1984.

**10.** The Buoys apparently do not contest the superior court's award to ERA of $10,000 in Rule

82 attorney's fees against Corrine Buoy, nor is there a basis for such a challenge since the jury refused to award Corrine Buoy damages on her claim.

Buoy's injuries and received a jury verdict for $141,676.

Past decisions of this court establish that "it is not an immutable rule that the party who obtains an affirmative recovery must be considered the prevailing party." *Owen Jones & Sons, Inc. v. C.R. Lewis Co.*, 497 P.2d 312, 313–14 (Alaska 1972); *see also Hayer v. National Bank of Alaska*, 619 P.2d 474, 477 (Alaska 1980). "Determination of who the prevailing party is does not automatically follow if the party receives an affirmative recovery, but rather is grounded on which party prevails on the main issues." *Continental Ins. Co. v. United States Fidelity and Guar. Co.*, 552 P.2d 1122, 1125 (Alaska 1976), *disapproved on other grounds in Farnsworth v. Steiner*, 638 P.2d 181, 184 n. 5 (Alaska 1981); *Alaska Placer Co. v. Lee*, 553 P.2d 54, 63 (Alaska 1976). Finally, this court has also held that a litigant who successfully defeats a claim of great potential liability may be the prevailing party even if the other side receives an affirmative recovery. *Hutchins v. Schwartz*, 724 P.2d 1194, 1204 (Alaska 1986); *Alaska Placer Co.*, 553 P.2d at 63. Given the foregoing precedent, we reject the Buoys' claims that they are entitled to prevailing party status as a matter of law.

Trial courts have discretion to determine which party is the prevailing party, and this court will reverse only upon finding an abuse of discretion. *Hutchins*, 724 P.2d at 1204. In the instant case, we hold that the trial court did not abuse its discretion. In order for the Buoys to have actually received any money from ERA, they would have had to obtain a verdict against ERA in excess of the principal sum of the Buoys' settlements with the helicopter component manufacturers. The amount of damages in relation to this settlement, rather than ERA's liability, was therefore the major issue. Since ERA ultimately did not have to pay the Buoys anything after the verdict in the Buoys' favor was reduced by the amount of their previous settlements, it was not an abuse of discretion to hold that ERA prevailed. Additionally, ERA successfully defeated a

claim of great potential liability. In the second trial, the Buoys sought damages against ERA in excess of $1 million, but received a verdict of only $141,676.

AFFIRMED.