John A. HILLMAN and Janet Hillman,
individually and Janet Hillman as Per-
sonal Representative of the Estate of
Julie G. Hillman, a deceased minor, Ap-
pellants,

v.

NATIONWIDE MUTUAL FIRE
INSURANCE COMPANY,
Appellee.

No. S–4555.

Supreme Court of Alaska.

July 9, 1993.

Michael J. Schneider, Mestas & Schneider, P.C., Anchorage, for appellants.

Peter J. Maassen, Burr, Pease & Kurtz, Anchorage, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

MATTHEWS, Justice.

John and Janet Hillman sued their insurer, Nationwide Mutual Fire Insurance Company (Nationwide), for bad faith in the handling of their uninsured motorist claim filed after the death of their daughter. The superior court granted Nationwide's motion to dismiss the claim, concluding that the insurer's decisions to deny coverage and to demand arbitration were reasonable. The Hillmans appeal this decision along with the trial court's designation of Nationwide as the prevailing party for attorney's fee purposes. We affirm on the merits but reverse the award of attorney's fees.

### I. FACTS AND PROCEEDINGS

On August 14, 1983, while driving an ATV owned by her father, eleven-year old Julie Hillman collided with an uninsured pickup truck driven by William Amis. Julie died six days later as a result of her injuries.

Nationwide had issued an automobile insurance policy to Julie's father, John Hillman, which provided uninsured motorist coverage up to $25,000 per person or $50,000 per occurrence. However, when on August 10, 1984, Janet Hillman, Julie's mother, contacted Nationwide to inquire about coverage and claim procedures, Maury Hafford, Nationwide's local adjustor, indicated that Nationwide had no liability. This denial was based on one of the "coverage exclusions" in the uninsured motorist section.[1] On February 7, 1985, after further inquiries by Mrs. Hillman, Hafford referred the claim to Nationwide's legal counsel in order to "clarify this issue of coverage for your understanding and satisfaction," as he wrote Mrs. Hillman. When, in late March 1985, Nationwide's attorney informed Hafford that "the question of coverage appears to be a roughly 50/50 proposition," Hafford wrote Hillman "seeking ... further details with regard to Julie's accident." However, he did not relay the attorney's opinion to Mrs. Hillman.

On April 1, 1985, the Hillmans filed a complaint against Nationwide for bad faith. The following month Nationwide offered the Hillmans $50,000 as a "compromise payment." The Hillmans rejected the offer, claiming that they were entitled to $150,000 under the insurance policy, plus medical benefits, incidental, consequential, and punitive damages.

The following April Judge Katz granted Nationwide's motion for summary judgment and dismissed the Hillmans' claims. The Hillmans appealed the decision.

---

1. The pertinent exclusion stated that [t]his Uninsured Motorists insurance does not apply as follows:
 ....
 4. It does not apply to bodily injury suffered while occupying a motor vehicle owned by you or a relative living in your household, but not insured for Uninsured Motorist coverage under this policy. It does not apply to bodily injury from being hit by any such vehicle. (Emphasis deleted.)

On July 1, 1988, this court held that the Hillmans were covered by the Nationwide policy. *Hillman v. Nationwide Mut. Fire Ins. Co.*, 758 P.2d 1248, 1250 (Alaska 1988) (*Hillman I*). We agreed with Nationwide's interpretation of the contractual language. However, a majority of the court refused to give effect to the uninsured owned motor vehicle exclusion contained in the policy for statutory and public policy reasons. *Id.* at 1251–52.

Once coverage was established, Nationwide chose to pursue the arbitration procedure mandated by the policy for determining liability.[2] Arbitration was held on January 30, 1989. The arbitrators concluded that Amis was 33% at fault with regard to the claims related to Julie's estate. As for John and Janet's claims for negligent infliction of emotional distress, the panel agreed that Amis' negligence accounted for 15% of the harm. The arbitrators awarded $92,500 to the Hillmans. Two weeks later Nationwide paid the Hillmans $50,000, the maximum amount of the uninsured motorist coverage provided by the policy.[3]

Following arbitration, the Hillmans' bad faith litigation began anew. On June 21, 1990, Judge Michalski granted Nationwide's motion for partial summary judgment, dismissing the bad faith claims associated with Nationwide's denial of coverage and decision to arbitrate.

After several pre-trial motions, Judge Michalski reconsidered an earlier ruling and granted Nationwide's motion for summary judgment on the remaining bad faith claims.[4] Dismissal of the claims was based

on Judge Michalski's belief that the Hillmans failed to demonstrate that they could show damages. After issuing the Final Judgment, the superior court identified Nationwide as the prevailing party and awarded costs and partial attorney's fees in the amount of $154,899.57.

This appeal followed.

## II. DISCUSSION

### A. Dismissal of the Hillmans' Bad Faith Claims

#### 1. Denial of Coverage

In *State Farm Fire & Casualty Co. v. Nicholson*, 777 P.2d 1152 (Alaska 1989), we held that insurance companies could be liable for the tort of bad faith in so-called "first-party" cases—cases in which insureds seek compensation from their own insurers for losses which they have suffered. *Id.* at 1156.

We had no occasion to comprehensively define the elements of the tort of bad faith in a first-party insurance context in *Nicholson;* we have not done so in subsequent cases, *see e.g.*, *State Farm Mut. Auto. Ins. Co. v. Weiford*, 831 P.2d 1264 (Alaska 1992); nor do we do so now. In recognizing the tort of bad faith in first-party cases, we aligned Alaska with those jurisdictions that have followed *Gruenberg v. Aetna Insurance Co.*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 510 P.2d 1032 (Cal.1973), apparently the first case to apply bad faith as a tort in first-party cases.[5] *Gruenberg* articulated the tort in a manner that seemed to require unreasonable conduct and bad

---

**2.** In *Hillman I*, we rejected the Hillmans' argument that Nationwide had waived its right to arbitration. *Hillman I*, 758 P.2d at 1253. The trial court held that although " 'Nationwide acted in bad faith in failing to disclose the availability of the arbitration procedure in four separate pieces of correspondence to Mrs. Hillman,' arbitration should proceed because the Hillmans were represented by counsel who 'simply made a calculated decision to attempt to obtain relief through the court system, knowing that the policy actually required dispute resolution through arbitration.' " *Id.* The court added that since " 'none of the litigants herein has clean hands,' '[t]he balance tips in favor of submitting appropriate issues to the contractually mandated arbitration process.' " *Id.* We found

no error in the trial court's reasoning or conclusion.

**3.** On June 12, 1989, Judge Gonzalez granted Nationwide's motion for partial summary judgment and barred the Hillmans from recovering arbitration damages for emotional distress. The arbitration award was consequently reduced to $55,000.

**4.** What these claims consisted of is not brought into focus in the briefs before us.

**5.** The jurisdictions that have followed *Gruenberg* are listed in William M. Shernoff, et al., *Insurance Bad Faith Litigation*, § 5.01 at 5.3 n. 4 (1984 and Supp.1992).

faith: "Accordingly, when the insurer unreasonably and in bad faith withholds payment of the claim of its insured, it is subject to liability in tort." *Gruenberg,* 510 P.2d at 1038.

A similar double requirement was imposed in *Noble v. National American Life Insurance Co.,* 128 Ariz. 188, 624 P.2d 866 (1981), another case on which we relied in *Nicholson.* The Arizona Supreme Court adopted the standard expressed by the Wisconsin Supreme Court in *Anderson v. Continental Insurance Co.,* 85 Wis.2d 675, 271 N.W.2d 368 (Wis.1978):

> The *Anderson* Court states:
>
> To show a claim for bad faith, a plaintiff must show the absence of a reasonable basis for denying benefits of the policy and the defendant's knowledge or reckless disregard of the lack of a reasonable basis for denying the claim. It is apparent, then, that the tort of bad faith is an intentional one....
>
> The tort of bad faith can be alleged only if the facts pleaded would, on the basis of an objective standard, show the absence of a reasonable basis for denying the claim, i.e., would a reasonable insurer under the circumstances have denied or delayed payment of the claim under the facts and circumstances.
>
> 271 N.W.2d at 376–77.
>
> Under the *Anderson* standard an insurance company may still challenge claims which are fairly debatable. The tort of bad faith arises when the insurance company intentionally denies, fails to process, or pay a claim without a reasonable basis for such action.

*Noble,* 624 P.2d at 868.

A leading text has this to say about the standard in first-party bad faith cases:

In third party situations, an insurer can be liable for an excess judgment when it has failed to settle a third party action against its insured. However, courts have not agreed on the standard for imposing such liability. Some courts impose liability for a negligent failure to settle the third party action; others apply a "bad faith" test that, in practical terms, amounts to a negligence test; and a third group of courts applies a fairly strict requirement of subjective bad faith. A similar divergence of views concerning the level of wrongdoing necessary to impose tort liability on insurers for denial of benefits appears to exist among courts that have adopted the tort of first party bad faith.

Although bad faith is not fully defined in some jurisdictions, courts have consistently held that a refusal to pay benefits based on a reasonable interpretation of the insurance contract is not bad faith.

Shernoff, *Insurance Bad Faith Litigation,* § 5.02[1] at 5–6 (1992) (footnotes omitted).

■ The above authorities make it clear that while the tort of bad faith in first-party insurance cases may or may not require conduct which is fraudulent or deceptive,[6] it necessarily requires that the insurance company's refusal to honor a claim be made without a reasonable basis.[7] Neither party takes issue with this proposition. Instead, the Hillmans argue that summary judgment should not have been granted because (a) reasonableness is always a question of fact for the jury and, alternatively, (b) under the facts and circumstances of this case there was a fact ques-

---

**6.** The Wisconsin Supreme Court may have modified the *Anderson* standard. In *Fehring v. Republic Insurance Co.,* 118 Wis.2d 299, 347 N.W.2d 595 (1984), the court held that proof that a reasonable insurer would not have acted as the defendant did under the circumstances establishes bad faith.

**7.** In *Loyal Order of Moose v. International Fidelity Insurance Co.,* 797 P.2d 622 (Alaska 1990), a case involving the somewhat analogous relationship between a surety and its obligee, we stated: "A surety may satisfy its duty of good faith to its

obligee by acting reasonably in response to a claim by its obligee, and by acting promptly to remedy or perform the principal's duties where default is clear." *Id.* at 628. In a footnote, we quoted an Arizona decision, *Dodge v. Fidelity and Deposit Co. of Maryland,* 161 Ariz. 344, 778 P.2d 1240 (1989), which uses language mirroring the rule of law employed in today's opinion: "So long as a surety acts reasonably in response to a claim made by its obligee, the surety does not risk bad faith tort liability." *Loyal Order of Moose,* 797 P.2d at 627 n. 8.

tion as to whether Nationwide had a reasonable basis for denying the claim.

■ The Hillmans' argument that reasonableness always presents a question of fact is without merit. Although questions of reasonableness often must be resolved at trial, we have not held that they are never an appropriate subject for summary judgment procedures. If, when viewing the evidence most favorably to the opponent of a motion for summary judgment, the trial court finds that a reasonable jury could only conclude that the challenged conduct must be characterized in one way, then summary judgment in accordance with that conclusion should be entered. *Schneider v. Pay 'N Save Corp.*, 723 P.2d 619, 623 (Alaska 1986).

The Hillmans also argue that the superior court tacitly accepted the standard of bad faith articulated in *National Savings Life Insurance Co. v. Dutton*, 419 So.2d 1357 (Ala.1982). In *Dutton*, the Alabama Supreme Court held that, except in extraordinary circumstances, "if the evidence produced by either side creates a fact issue with regard to the validity of the claim ... the [bad faith] tort claim must fail and should not be submitted to the jury." *Id.* at 1362. In short, under the *Dutton* test, the plaintiff must prove that plaintiff is "entitled to a directed verdict on the contract claim and, thus, entitled to recover on the contract claim as a matter of law." *Id.*

■ We need not address whether the superior court adopted the *Dutton* standard. *Dutton* does not state the Alaska rule of law. Our position is merely that where the insurer establishes that no reasonable jury could regard its conduct as unreasonable, the question of bad faith need not and should not be submitted to the jury.

■ The Hillmans' alternative argument—that they presented sufficient evidence to raise a fact question as to whether Nationwide's denial of coverage had a reasonable basis—requires more discussion.

The Hillmans argue that they presented evidence showing that Nationwide denied coverage before making *any* investigation of the facts or the law and that Nationwide made subsequent, formal denials of coverage without having conducted significant investigation. They also argue that Nationwide's agents violated its guidelines and policies, which are intended to guarantee fair, honest and reasonable claims handling. Among others, this included violating the company policy requiring local adjustors to consult with higher echelons in the company before denying a death claim; failing to resolve all reasonable doubts about coverage in favor of the policy holder; withholding from the file any explanation for why the policy holder was required to sign a nonwaiver agreement; obtaining a legal opinion just to "paper the file" and for the main purpose of denying the claim; failing to provide a policy holder with a previously promised letter from Nationwide's attorney regarding coverage; lying to the policy holder about whether that letter was available; and "stonewalling" the claim for four years because of vindictiveness towards the Hillmans' attorneys.[8] Finally, the Hillmans argue that even after Nationwide had given its personnel the authority to concede coverage and settle the underlying case for the $50,000 policy limits, its Regional Claims Attorney unilaterally decided not to do so.

In our view none of these facts suffice to raise a factual question as to whether Nationwide's denial of coverage lacked a reasonable basis. The denial was based on an explicit exclusion in the policy. The question in this case is whether Nationwide was unreasonable in treating the exclusion as valid. As to this question, the Hillmans have directed us to no evidence suggesting unreasonableness. We have found that "the only reasonable interpretation" of this exclusion was that advanced by Nationwide. *Hillman I*, 758 P.2d at 1250. We also concluded in *Hillman I* that the exclusion was invalid on statutory and public policy grounds. Two of the five members

---

**8.** The Hillmans maintain that Nationwide's District Claims Manager and its Regional Claim Attorney concede that Nationwide failed to fol- low its own policies and procedures in all these respects.

of this court disagreed that the exclusion was invalid. *Id.* at 1255 (dissenting opinion of Justice Burke, joined by Justice Moore). *See also State Farm Mut. Auto. Ins. Co. v. Bass*, 231 Ga. 269, 201 S.E.2d 444, 445 (1973) (where appellate court was divided on interpretation of uninsured motorist statute, "insurer was legally justified in litigating the issue and cannot, as a matter of law, be liable for ... bad faith"). Further, as we acknowledged in *Hillman I*, a respectable minority of jurisdictions have reached the same conclusion as the dissent. *Hillman I*, 758 P.2d at 1251. The facts that Nationwide did not follow its standard procedures in denying coverage, that it did not forward its attorney's letter to the Hillmans, and that its $50,000 offer was conditioned on settling all of Hillmans' claims rather than their uninsured motorist claims, do not suffice to create a fact question as to whether Nationwide's decision to deny coverage lacked a reasonable basis, as they have little or no relevance on that point. We conclude, therefore, that there are no genuine issues of material fact as to whether Nationwide's denial of coverage was reasonable.[9]

### 2. Demand for Arbitration

■ In the same order dismissing the bad faith claim related to coverage denial, Judge Michalski also dismissed the bad faith claim based on Nationwide's demand for arbitration. Judge Michalski found that the arbitration demand was not in bad faith because Nationwide "merely exercised its right." The court reiterated the decision in its March 7, 1991 order dismissing the Hillmans' remaining bad faith claims.

The Hillmans contend that Nationwide had no reasonable basis to demand arbitration. Instead, they argue, Nationwide's agents insisted on arbitration in order to discourage the Hillmans from proceeding with their legitimate claims and because of vindictiveness and aggravation with their attorneys.

However, the insurance policy covered the Hillmans "only to the extent the uninsured motorist was liable." Based on evidence from the initial police report, Nationwide could reasonably conclude that Amis was only partially responsible for the accident.[10] The subsequent findings of the arbitrators, that Julie was 66% at fault for the accident and her parents 85% at fault for their emotional distress, lend additional support to Nationwide's claim that its demand for arbitration was reasonable. *See Sullivan v. Allstate Ins. Co.*, 111 Idaho 304, 723 P.2d 848, 850 (1986) (a subsequent arbitrator's decision that a claimant was partially negligent was clear evidence that an insurer's denial of liability was not in bad faith). Consequently, Nationwide's decision to demand arbitration was reasonable and therefore not in bad faith.

### B. Award of Attorney's Fees

■ An award of attorney's fees will be reversed if the trial court's determination is an abuse of discretion or "manifestly unreasonable." *Luedtke v. Nabors Alaska Drilling, Inc.*, 768 P.2d 1123, 1138 (Alaska 1989). Designation of the prevailing party "is committed to the broad discretion of the trial court." *Apex Control Systems, Inc. v. Alaska Mechanical, Inc.*, 776 P.2d 310, 314 (Alaska 1989).

The determination will be affirmed on appeal "unless it is shown that the court abused its discretion by issuing a decision which is arbitrary, capricious, mani-

---

**9.** This conclusion is consistent with *State Farm Mutual Automobile Insurance Co. v. Bass*, 231 Ga. 269, 201 S.E.2d 444 (1973) and *Aetna Casualty & Surety Co. v. Superior Court*, 161 Ariz. 437, 778 P.2d 1333 (App.1989). In both cases, courts found that an insurer was not liable for bad faith when it denied coverage to an insured on the basis of an uninsured motorist exception which was later held invalid. *See also Hanson v. Prudential Insurance Co. of America*, 772 F.2d 580 (9th Cir.1985) (applying California law).

**10.** The report stated that Julie had "failed to yield when entering Long Lake Road from a side road." The Hillmans note that the information available to Nationwide when it insisted on arbitration was insufficient to prove that Amis was not *at all* at fault. This is true but irrelevant. Nationwide was entitled to arbitration if it could reasonably maintain that Amis was not *completely* at fault.

festly unreasonable, or improperly motivated."

*Howard S. Lease Constr. Co. & Assoc. v. Holly,* 725 P.2d 712, 720 (Alaska 1986) (quoting *City of Yakutat v. Ryman,* 654 P.2d 785, 793 (Alaska 1982)).

After the Final Judgment was issued, Judge Michalski awarded Nationwide approximately $155,000 in costs and partial attorney's fees.[11] The Hillmans argue that the trial court abused its discretion when it determined that Nationwide was the prevailing party. The Hillmans claim that since they prevailed on two of the three issues in the case, coverage and liability, but not on bad faith, they were the "prevailing party."

Civil Rule 82(a) directs that attorney's fees be awarded to the prevailing party.[12] "[T]he prevailing party is the one 'who has successfully prosecuted or defended against the action, the one who is successful on the "main issue" of the action and "in whose favor the decision or verdict is rendered and the judgment entered." ' " *Day v. Moore,* 771 P.2d 436, 437 (Alaska 1989) (quoting *Adoption of V.M.C.,* 528 P.2d 788, 795 n. 14 (Alaska 1974)).

 This court has recognized that "it is not an immutable rule that the party who obtains an affirmative recovery must be considered the prevailing party." *Owen Jones & Sons, Inc. v. C.R. Lewis Co.,* 497 P.2d 312, 313–14 (Alaska 1972). We have been cited to two cases[13] where the party who obtained an affirmative recovery was held not to be the prevailing party by the trial court and this decision was affirmed on appeal. The cases are *Owen Jones* and *Hutchins v. Schwartz,* 724 P.2d 1194 (Alaska 1986). In *Hutchins,* the plaintiff sought

$275,000 in compensatory damages. After a trial the jury returned a verdict in favor of the plaintiff, awarding some $1,900, which in turn had to be reduced by 40% because of the plaintiff's comparative negligence. *Id.* at 1204. Thus the plaintiff's affirmative award was only approximately $1,100. This recovery is so small in comparison with what was sought that it may properly be considered *de minimis.* The verdict essentially was a defense verdict.[14]

*Owen Jones* may not be so easily distinguished. There, Jones–Western, a contractor, sued its subcontractor, C.R. Lewis Co., to recover approximately $120,000 in progress payments that Jones–Western had paid C.R. Lewis in connection with construction of a building that was destroyed by an earthquake before it was completed. The subcontractor counterclaimed for services rendered and materials furnished before the collapse. The trial court held that Jones–Western was not entitled to recover progress payments and that the subcontractor had a claim in *quantum meruit* for the reasonable value of the services and materials supplied prior to the earthquake. The trial court fixed this sum at approximately $142,000. Thus, the subcontractor would have been entitled to an affirmative recovery of some $22,000 except for the fact that it salvaged some materials from the building after the earthquake on which the court placed a value of $30,000. Because of this, Jones–Western was left with a small affirmative recovery. We described this recovery in *Owen Jones* as merely "incidental": "This recovery based on the accounting can be classified as an incidental recovery which will not be a sufficient recovery to bar a party who has defended a large claim from being consid-

---

11. The total consisted of $44,448.57 in costs and $110,451.00 in fees. The attorney's fees award was 40% of the total amount of attorney's fees Nationwide incurred after July 1988.

12. Alaska R.Civ.P. 82(a)(2) states:
 In actions where the money judgment is not an accurate criterion for determining the fee to be allowed to the prevailing side, the court shall award a fee commensurate with the amount and value of legal services rendered.

13. *Buoy v. ERA Helicopters, Inc.,* 771 P.2d 439 (Alaska 1989), is not a case in which the plain-

tiff received an affirmative recovery. The $141,676 jury verdict the plaintiff received in that case was reduced to nothing because of prior settlements which the plaintiff had made. *Id.* at 441.

14. In addition, in *Hutchins* the defendant had made an offer of judgment under Civil Rule 68 for $35,000 and therefore under that rule he was in any case entitled to attorney's fees incurred after the date of the offer. *Id.* at 1203.

ered a prevailing party." *Owen Jones,* 497 P.2d at 314, n. 5. We also noted that the "main issue" in the case below was whether the subcontractor had an obligation to refund the progress payments. The subcontractor prevailed on this issue. *Id.* at 314. Accordingly, we affirmed the trial court's holding that the subcontractor was the prevailing party. *Id.*

In reaching our conclusion in *Owen Jones,* we distinguished *Buza v. Columbia Lumber Co.,* 395 P.2d 511 (Alaska 1964). *Buza* was a suit brought for conversion of a quantity of logs. The plaintiff sought the return of the logs, worth some $8,000, plus compensatory and punitive damages of $31,000. After a trial the plaintiff was awarded the logs, but no damages. We held, nonetheless, that the plaintiff was the prevailing party, defining that term to mean the party "who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even though not to the extent of the original contention." *Buza,* 395 P.2d at 514.

In *Owen Jones* we distinguished *Buza* as follows:

> The main issue in that case was the ownership of a quantity of logs, and the plaintiff proved his right to the logs although he was not able to obtain compensating or punitive damages.
>
> The instant case differs because the recovery of appellants was based only on an accounting for materials salvaged by the appellee. It was clear that the main issue had been resolved against appellants when the court found that appellee had no obligation to refund its progress payments under the contract....

*Owen Jones,* 497 P.2d at 314 (footnote omitted).

In our view the present case more closely resembles *Buza* than *Owen Jones.* Here,

as in *Buza,* plaintiff prevailed on the basic liability question and received an affirmative recovery based on its successful litigation of that question, which was substantial in amount. *Owen Jones* is distinguishable because the plaintiff's affirmative recovery there was based on a minor accounting issue, not on the liability theory which plaintiff tried unsuccessfully before the court.

In the present case, the Hillmans are no doubt disappointed that they did not receive compensatory and punitive damages against the insurance company on their claim of bad faith. Nonetheless, they prevailed against vigorous opposition on their claim of policy coverage and received $50,-000 on that claim. This recovery cannot be classified as an incidental one unrelated to the main focus of the litigation in this case. We conclude therefore that the trial court erred in refusing to designate the Hillmans as the prevailing party.[15] Accordingly the award of attorney's fees must be reversed and this case remanded so that an award of reasonable attorney's fees may be made in favor of the Hillmans.

## III. CONCLUSION

We affirm the decision of the superior court granting Nationwide's motion for summary judgment on the Hillmans' bad faith claims. Nationwide's decisions to deny coverage and then to demand arbitration were reasonable. In light of our decision, there is no reason to consider the damages issue.[16]

The superior court's designation of Nationwide as the prevailing party was an abuse of discretion. Since the Hillmans prevailed on two of the three issues central to the case and won a substantial affirmative recovery based on these issues, they were the prevailing party. The trial court

---

**15.** The fact that Nationwide made an offer of settlement of $50,000 is irrelevant to the question of who the prevailing party is since this offer was not made under Civil Rule 68. *Myers v. Snow White Cleaners & Linen Supply, Inc.,* 770 P.2d 750, 753 (Alaska 1989) ("no offers not in compliance with Civil Rule 68 should be considered in determining questions of costs and attorney's fees").

**16.** In addition, we decline to address the Hillmans' claim that several of the superior court's evidentiary rulings were an abuse of discretion. Even if the superior court's rulings concerning the admissibility of evidence during trial were erroneous, such error was harmless where the case was never submitted to the jury.

should make a new award reflecting this determination.

The superior court's decision granting summary judgment on the bad faith claims is AFFIRMED. The award of attorney's fees is REVERSED and REMANDED.

COMPTON, Justice, with whom, BURKE, Justice, joins, dissenting in part.

While declining to comprehensively define the elements of the tort of bad faith, the court has actually eliminated the implied covenant of good faith and fair dealing in insurance contracts. The court concludes that summary judgment is appropriate if the insurer has a reasonable (colorable) contractual basis for denying liability. In other words, the insurer may enforce a contractual basis for denying liability regardless of any subjective bad faith. Because the court's analysis is contrary to law and not supported by policy, and because a reasonable jury could find that Nationwide acted with subjective bad faith, I dissent.

The court concludes that the tort of bad faith in the context of first party insurance claims necessarily includes a requirement that the insurer's refusal to honor the claim be made without a reasonable basis. It should be noted that the Hillmans do not accept this proposition, because contrary to the court's conclusion, the Hillmans do not accept that a reasonable basis can exist if actions are motivated by improper purposes. The Hillmans argue that because evidence was presented that shows Nationwide's denial was motivated by self serving, dishonest and improper purposes, summary judgment was inappropriate. "Where the record supports plaintiff's contention that acts or omissions by the carrier were for a bad-faith purpose or motive, the matter should be submitted to a jury for its determination." Thus the issue is properly before us.

Until today the covenant of good faith and fair dealing, which we have implied in every contract including insurance contracts, has imposed duties above and beyond express contractual duties. *Guin v. Ha*, 591 P.2d 1281, 1291 (Alaska 1979).

The additional duties imposed by the covenant of good faith and fair dealing were not eliminated when this court accepted the argument that in insurance contracts, a breach of the covenant sounds in tort. "That responsibility is not the requirement mandated by the terms of the policy itself—to defend, settle, or pay. It is the obligation, deemed to be imposed by the law, under which the insurer must act fairly and in good faith in discharging its contractual responsibilities." *Gruenberg v. Aetna Insurance Company*, 9 Cal.3d 566, 108 Cal.Rptr. 480, 485, 510 P.2d 1032, 1037 (1973).

The covenant of good faith and fair dealing requires that the party act with both *subjective* good faith and *objective* fairness. *Luedtke v. Nabors Alaska Drilling, Inc.*, 834 P.2d 1220, 1225 (Alaska 1992). It is objectively reasonable to rely on contractual rights. Contractual rights, therefore, provide a reasonable basis for a position. But this does not end our inquiry. The covenant of good faith and fair dealing requires that contractual rights be pursued with subjective good faith. In *Mitford v. de Lasala*, 666 P.2d 1000, 1007 (Alaska 1983), even though the employment at will contract allowed the firing of Mitford for no reason at all, "the circumstances surrounding Mitford's termination give rise to an inference that he was fired ... for the purpose of preventing him from sharing in future profits," thereby violating the duty of good faith and fair dealing. In *Loyal Order of Moose v. International Fidelity Insurance Co.*, 797 P.2d 622, 629 (Alaska 1990), we noted that while the surety had a contractual right to demand arbitration, "the demand for arbitration may not itself be made in bad faith, or serve to defeat an otherwise timely and sufficient bad-faith claim."

We have declined to hold that a breach of the covenant of good faith and fair dealing sounds in tort in the context of employment contracts. However, because of the special nature of insurance contracts, a breach of the covenant of good faith and fair dealing in first party insurance claims does sound in tort. *State Farm Fire & Cas. Co. v.*

*Nicholson,* 777 P.2d 1152, 1156–57 (Alaska 1989).

> The adhesionary aspects of the insurance contract, including the lack of bargaining strength of the insured, the contract's standardized terms, the motivation of the insured for entering into the transaction and the nature of the service for which the contract is executed, distinguish this contract from most other non-insurance commercial contracts. These features characteristic of the insurance contract make it particularly susceptible to public policy considerations.

*Id.,* quoting Louderback & Jurika, *Standards for Limiting the Tort of Bad Faith Breach of Contract,* 16 U.S.F.L.Rev. 187, 200–01 (1982). The reason for holding that such claims sound in tort is because "an action in tort provides a remedy for harm done to insureds though no breach of an express contractual covenant has occurred and where contract damages fail to adequately compensate insureds." *Id.,* quoting *White v. Unigard Mutual Insurance Co.,* 112 Idaho 94, 730 P.2d 1014, 1017–18 (1986).

*Nicholson* is consistent with our policy that because of the special nature of insurance contracts, they are particularly susceptible to public policy considerations. *Hillman v. Nationwide Mutual Fire Ins. Co.,* 758 P.2d 1248, 1250 (Alaska 1988) (invalidating uninsured motor vehicle exclusion on the basis of public policy); *CHI of Alaska, Inc. v. Employers Reinsurance Corp.,* 844 P.2d 1113 (Alaska 1993) (granting an insured the unilateral right to select independent counsel in cases where an insurer has reserved its rights, despite the insurer's express contractual right to select counsel); *Estes v. Alaska Ins. Guar. Ass'n,* 774 P.2d 1315 (Alaska 1989) (concluding

that a time limitation on commencement of suit will only be enforced on a showing of prejudice); *Alaska Energy Authority v. Fairmont Insurance Co.,* 845 P.2d 420 (Alaska 1993) (concluding that the failure to file suit within the time limitation of the contract does not bar a claim without a showing of prejudice).

In spite of these cases, this court now concludes that as long as there exists a reasonable contractual basis for a denial of liability, a bad faith claim sounding in tort will fail regardless of any evidence of subjective bad faith. The court interprets our adoption of *Gruenberg* as "seem[ing]" to require proof of both objectively unfair conduct *and* subjective bad faith. *Gruenberg* was the first case to hold that a breach of the covenant of good faith and fair dealing sounds in tort, giving the plaintiff broader remedies than those in contract. While in *Gruenberg* there may have been evidence of both unfair conduct and bad faith, the court clearly articulated "the obligation, deemed to be imposed by the law, under which the insurer must act fairly *and* in good faith in discharging its contractual responsibilities." 510 P.2d at 1037 (emphasis added).

Instead of providing more protection for an insured by adopting the proposition that a bad faith claim may sound in tort, in fact we are providing less protection. In the context of first party insurance claims, the court has actually limited the covenant of good faith and fair dealing by imposing a twofold requirement which it has not required in any other contract. The covenant of good faith and fair dealing is meaningless if existence of a reasonable contractual basis for denial of liability is alone sufficient to defeat a bad faith claim.[1]

---

1. This court stated in *State Farm Mutual Auto Insurance Co. v. Weiford,* 831 P.2d 1264, 1266 (Alaska 1992), that an insured may bring a bad faith claim "in tort as well as in contract." The duty of good faith and fair dealing implied in every contract requires the insurer to act with subjective good faith *and* objective fairness, unlike the tort of bad faith which, as now defined, permits the insurer to act with subjective bad faith. If *Weiford* is still a correct statement of the law, then the proper disposition of this case would be to remand it to the superior court for

further proceedings. The Hillmans should be permitted to proceed on a claim based on a breach of the implied covenant of good faith and fair dealing arising out of the contractual relationship, distinct from a claim based on the tort of bad faith. They have set forth specific facts which, viewed in a light most favorable to them, raise genuine issues of material fact. Contractual damages based on a breach of the implied covenant of good faith and fair dealing may be narrower in scope than tort damages, yet some relief may be available to the Hill-

This is contrary to our previous holdings. For example, in *State Farm Mutual Auto Insurance Co. v. Weiford*, 831 P.2d 1264, 1266 (Alaska 1992), we reaffirmed that "bad faith claims brought by insured persons against their insurance companies may be brought in tort as well as in contract." We vacated the award of punitive damages because "the $20,000 offer clearly was reasonable. While the suspect note to the file might be reflective of bad motive, since the offer in question was reasonable, the note cannot independently form the basis for a punitive damages award." *Id.* at 1268. However, we noted that "the crux of Weiford's bad faith case was the testimony of her expert, George Broatch. Broatch testified that no single act of State Farm amounted to bad faith, but that cumulatively State Farm's actions did: 'It—to me it was a matter of the company philosophy. I don't really have any quarrel with the day to day handling of the file particularly.'" *Id.* at 1267. We concluded "that there was sufficient evidence to support a jury finding that State Farm acted in bad faith." *Id.* at 1269. The court is correct in rejecting the Hillmans' assertion that reasonableness is always a question of fact for the jury. But the proper question is whether a reasonable jury could conclude that Nationwide acted unreasonably, *i.e. either* objectively unfairly *or* with subjective bad faith.

In reviewing a grant of summary judgment we view the facts in the light most favorable to the non-prevailing party. *Loyal Order of Moose*, 797 P.2d at 628. The Hillmans presented evidence that Nationwide denied coverage before making an investigation of the facts or law. Nationwide violated its internal guidelines and policies which guarantee fair, honest and reasonable claims handling. Specifically, Nationwide: (1) failed to follow internal procedures when local adjustors failed to consult with higher echelons in the company before denying the death claim; (2)

failed to resolve all reasonable doubts about coverage in favor of the policy holder; (3) failed to explain why a nonwaiver agreement was required; (4) obtained a legal opinion in order to justify denying the claim; (5) failed to provide the Hillmans with previously promised information from its attorney; (6) lied about whether a letter from its attorney was available; (7) stonewalled for four years because of alleged vindictiveness toward the Hillmans' attorneys; and, (8) even after authority to concede coverage and settle the case was granted, the Regional Claims Attorney unilaterally decided not to settle.

Taking these assertions as true,[2] a reasonable jury could conclude that by failing to investigate, lying to the policy holder and stonewalling for four years, Nationwide acted with subjective bad faith. The grant of summary judgment was improper. Yet this court concludes that as long as Nationwide had a reasonable contractual basis for denying liability, evidence of bad faith and unfair dealings "have little or no relevance."

The court applies this same standard to the question of arbitration. Again, on summary judgment we view the facts in a light most favorable to the non-prevailing party. *Loyal Order of Moose*, 797 P.2d at 628. The Hillmans claim Nationwide insisted on arbitration in order to discourage the Hillmans from proceeding with their legitimate claims, and because of vindictiveness and aggravation with Hillmans' attorneys. Again, a reasonable jury could conclude that Nationwide acted with subjective bad faith. Yet because Nationwide's insurance policy contained an arbitration provision, "Nationwide's decision to demand arbitration was reasonable and therefore not in bad faith." This conclusion ignores *Loyal Order of Moose*, 797 P.2d at 629, which specifically states that even though a surety *may have a right* to arbitration, "the demand for arbitration may not itself be

---

mans. However, the correctness of the statement in *Weiford* is now doubtful, despite this court's assertion that it is declining to "comprehensively" define the elements of the tort of bad faith.

2. While the Hillmans have not at this point presented. convincing evidence of their assertions, they have set forth specific facts which, viewed in the light most favorable to the Hillmans, raise a genuine issue of fact.

made in bad faith, or serve to defeat an otherwise timely and sufficient bad-faith claim." The court's conclusion again effectively eliminates the covenant of good faith and fair dealing.

The Hillmans presented evidence from which a reasonable jury could conclude Nationwide acted with subjective bad faith. There are genuine issues of material fact which preclude summary judgment.