Ricky W. ASHLEY, Appellant,

v.

Sheila Ann BAKER, Appellee.

No. S–5250.

Supreme Court of Alaska.

Feb. 4, 1994.

Robert A. Sparks, The Law Office of Robert A. Sparks, Fairbanks, for appellant.

Before MOORE, C.J., and RABINOWITZ, MATTHEWS and COMPTON, JJ.

## OPINION

MATTHEWS, Justice.

This case involves a dispute over a deed to real property. The deed under which Sheila Ann Baker was grantor and Ricky W. Ashley was grantee, described the property that it conveyed as follows:

½ interest in lot 13—sec 7—T1S R1W Fairbanks Meridian—specifically the 1 acre lot with apt C located on it. Fairbanks recording district.

Lot 13 is a two and one-half acre parcel located in Fairbanks. Three cabins are located on the property which the parties described as Cabins A, B, and C. Cabin A is used by Baker as her residence, Cabin B is used as rental property, and Cabin C has at times been used as rental property and at times as Ashley's residence. About one-half acre of the total parcel is subject to roadway easements.

When the deed was delivered to Ashley in the fall of 1988, Baker and Ashley were living together. Baker had previously told Ashley that she wanted to give him a one-half interest in Lot 13. Ashley demurred, stating that the offer was overgenerous and that he didn't want the responsibilities of property ownership. According to Baker, the property description she originally wrote on the deed form was simply "½ interest in lot 13—sec 7—T1S R1W Fairbanks Meridian." She testified, however, that she later added the language "specifically the 1 acre lot with apt C located on it," intending to convey to Ashley a one-half interest in the one acre parcel containing Cabin C. After doing this, she had the deed recorded in the Fairbanks' recorders office. It was then delivered to Ashley by mail, apparently without any additional comment.

After delivery of the deed, the relationship between Ashley and Baker deteriorated and Ashley and Baker began living in separate cabins on the lot. In April of 1991 Ashley filed the present action against Baker to quiet the title which he was granted by the deed, for partition, if necessary, and for damages caused by Baker's interference with his property rights.

After much pretrial skirmishing, the case went to trial. Ashley contended that the deed made him the owner of an undivided one-half interest in the whole of Lot 13 or, in the alternative, that the deed conveyed to

him a 100 percent interest in one acre surrounding Cabin C. Baker defended, arguing first that the deed was invalid for fraud, lack of consideration, and an inadequate description and, alternatively, if the deed was found valid, that it conveyed only a one-half interest in one acre which surrounded Cabin C.

The trial court rejected Baker's contentions that the deed was invalid, but construed the deed narrowly in accordance with Baker's contention that what was conveyed was a one-half interest in one acre surrounding Cabin C. The trial court further concluded that the one acre parcel should be "partitioned and sold." It also found that Ashley owed Baker $650 in rent for the period from September 1991 through February 1992 when Ashley lived in Cabin C. This amount, however, was to be offset by the $579.42 in excess taxes Ashley had paid on Lot 13. After the offset, therefore, Ashley was to pay Baker $70. Based on these findings the superior court entered a judgment and decree quieting title and providing for partition and sale and for an order of attorney's fees in favor of Baker in the amount of $2,145.95. Ashley appeals.

## I. INTERPRETATION OF THE DEED

■ We have noted that a three-step analysis should be employed in interpreting a deed to real property:

1. "[L]ook to the four corners of the [deed] to see if it unambiguously presents the parties' intent...."

2. "If the deed is ambiguous, the next step in determining the parties' intent is a consideration of the facts and circumstances surrounding the conveyance."

3. "Only if these two steps do not resolve the controversy should the court resort to rules of construction" in deciphering the parties' intent.

*Norken Corp. v. McGahan,* 823 P.2d 622, 626 (Alaska 1991) (citations omitted).[1]

■ The superior court found that the deed was ambiguous. Ashley contests this conclusion on appeal. His argument, however, demonstrates that the deed is ambiguous for he contends that "the deed either conveys one-half of the lot if the one acre language fails for lack of identification, or the deed conveys one acre of property if the specific amount is found to be controlling...." There is also a third reasonable possibility—the one urged by Baker and found by the trial court—that the deed conveyed a one-half interest in the one acre surrounding Cabin C.

We now consider the validity of the superior court's holding that the deed conveyed only a one-half interest in the one acre around Cabin C. The superior court reached this conclusion through the following reasoning. The court first found that both Ashley and Baker *knew* that Lot 13 was 2.5 acres in area. Next, the court noted that the deed referred to a *one acre* parcel. Lastly, the court noted that one half of 2.5 acres is 1.25 acres, *not one acre.*[2] Based on these find-

[1]. We note that this seemingly rigid three-step formulation may be out of step with our approach to contract interpretation. While we generally find an unambiguous contract term to be dispositive of the parties' intended meaning, *see Klosterman v. Hickel Investment Co.,* 821 P.2d 118, 124 (Alaska 1991) ("Where a contract provision is unambiguous, we will ascertain the parties' intention from the instrument itself."), we do not require a threshold finding of ambiguity before considering extrinsic evidence of the parties' expectations. Rather, our analysis is more fluid:

> When interpreting contracts, the goal is to "give effect to the reasonable expectations of the parties." *Mitford v. de Lasala,* 666 P.2d 1000, 1005 (Alaska 1983). In pursuit of this goal, the court must "look first to the written agreement itself *and also to extrinsic evidence regarding the parties' intent at the time the*

*contract was made." Norton v. Herron,* 677 P.2d 877, 880 (Alaska 1984).

*Stepanov v. Homer Elec. Ass'n,* 814 P.2d 731, 734 (Alaska 1991) (emphasis added). We have no occasion in this case, however, to reconsider the *Norken* approach.

[2]. The court noted Ashley's argument that one half of the *unencumbered* two acres of Lot 13 equals *one acre.* In other words, Ashley attempted to harmonize the deed's reference to one half of Lot 13 and to a one acre parcel by arguing that the deed referred only to one half of the unencumbered two acres of Lot 13. The court, however, rejected Ashley's argument because it found that neither Ashley nor Baker were thinking of the half acre of easements over Lot 13 at the time of the deed.

ings, the court concluded that Ashley's claim to one half of Lot 13—i.e., 1.25 acres—would leave unexplained the deed's express reference to a "*one acre* lot." Thus, "knowing the size of the lot, and based on the testimony," the superior court concluded that the deed conveyed an undivided one-half interest in the one acre containing Cabin C.

 On appeal, Ashley challenges the superior court's ruling with Baker's statement, before delivery of the deed, that she was going to give him one half of the entire Lot 13. Ashley argues that Baker's words should control the intended meaning of the deed.[3] The superior court, in weighing the credibility of the witnesses, however, rejected this argument based on Baker's testimony regarding her actions *after* speaking to Ashley. Specifically, Baker testified that she originally drafted the deed to convey a one-half interest in all of Lot 13. Before delivering and recording the deed, however, she claims that she added the phrase "specifically the 1 acre lot with apt C located on it" in order to restrict the deed to a half interest in the one acre around Cabin C. Baker claims that she made this change for two reasons. First, when she originally spoke to Ashley, he refused to accept her offer of the property because it was too generous. Second, Baker overheard Ashley bragging about how he would be entitled to half of the rents for Lot 13 if he became half owner of the lot. To avoid these problems, Baker contends that she reduced the amount of land covered by the deed to the land around Cabin C. Baker's testimony that the deed was written in two different pens supports this contention. The superior court chose to credit Baker's testimony. Therefore, we hold that the su-

perior court did not err in concluding that the deed conveyed an undivided one-half interest in the one acre containing Cabin C.

## II. COMPENSATION FOR COTENANT'S EXCLUSIVE USE

 In paragraph 22 of its findings of fact, the superior court ruled that Ashley owed Baker compensation for his exclusive use of Cabin C:

> For the period from September 1991 through February 1992, the fair rental value of Cabin C is $200.00 per month. As tenants in common, the parties are each entitled to 50% of the rental income. Accordingly, for the six months from September 1991 through February 1992, and for any occupancy after February 1992, Ashley owes $100.00 per month to Baker.

The superior court assumed that a cotenant's exclusive use of joint property, without more, entitles the other cotenant to compensation for that use. We rejected this proposition in *Wood v. Collins,* 812 P.2d 951 (Alaska 1991):

> As a general rule, at common law a tenant in common who occupies all or more than his proportionate share of the common premises and who has not agreed to pay therefor or ousted or excluded his cotenant or cotenants is not liable to his cotenant or cotenants, *because of such occupancy alone,* for rent or for use and occupation.

*Id.* at 958 (quoting 86 C.J.S. *Tenancy in Common* § 46 (1954)) (emphasis added). The superior court made no findings regarding an agreement to pay or an ouster by Ashley. Thus, we hold that the superior court erred in awarding Baker rental income for Ashley's use of Cabin C.

---

**3.** Ashley also argues that Baker's words and actions *after* delivery of the deed should estop her "from taking the position that the deed conveyed less than one-half of the lot to him, or, alternatively, the one acre specifically mentioned in the deed...." Ashley argues that he relied on Baker's "representations and ·actions" in making substantial improvements to the entire parcel and that this reliance should estop Baker from arguing a more limited scope of the deed. *See Bibo v. Jeffrey's Restaurant,* 770 P.2d 290, 293 (Alaska 1989). This argument fails for two reasons.

First, Ashley does not identify any post-delivery "representations and actions" that he relied

upon in making improvements. Indeed, Ashley did not make this argument below and, thus, the superior court could not address Baker's post-deed words or actions. Since Ashley did not raise this point at trial, and since resolution of this issue would require resort to "new or controverted facts," we do not address this point on appeal. *Sea Lion Corp. v. Air Logistics of Alaska,* 787 P.2d 109, 115 (Alaska 1990).

Second, we note that even if Ashley properly raised estoppel, the superior court gave little credit to Ashley's claim that he made significant improvements to the entire lot. Thus, Ashley would not be able to show detrimental reliance.

## III. PARTITION

The superior court ordered the partition by sale of the one acre jointly owned by Baker and Ashley. Alaska Statute 09.45.290 provides for the partition by sale of property when

> it appears that the property or a part of it is so situated that partition cannot be made without *great prejudice* to the owners....

AS 09.45.290 (emphasis added). Additionally, AS 09.45.330 provides that "[i]f it appears by evidence to the satisfaction of the court that a partition cannot be made without *great prejudice* to the owners, it shall order the sale of the property." AS 09.45.330 (emphasis added). In reviewing the superior court's order, we face three questions. First, what is "great prejudice"? Second, under what standard should we review a superior court's finding of "great prejudice"? Third, did the superior court err under the applicable standard of review? We address each point in turn.

■ We have never interpreted the phrase "great prejudice" as used in AS 09.45.290 and .330. Much authority construing the phrase exists in other jurisdictions, however, as many states share the "great prejudice" requirement for a partition by sale. The consensus view is that "great prejudice" refers to *economic* harm: "The established test of whether a partition in kind would result in great prejudice to the owners is 'whether the value of the share of each in case of a partition would be *materially less* than his share of the money equivalent that could probably be obtained for the whole.'" *Haggerty v. Nobles*, 244 Or. 428, 419 P.2d 9, 12 (1966) (quoting *Idema v. Comstock*, 131 Wis. 16, 110 N.W. 786, 787 (1907)) (emphasis added).[4] As the Oregon Supreme Court has emphasized, "the *financial interests* of the owners is the primary factor to be considered for purposes of a determination of prejudice in the event

of partition or sale." *Fike v. Sharer*, 280 Or. 577, 571 P.2d 1252, 1254 (1977) (emphasis added). We agree and, thus, adopt the economic definition of "great prejudice."

■ The wording of AS 09.45.330 resolves the question of standard of review. That section requires that "great prejudice" be shown "by evidence to the satisfaction of the court." This provision suggests that the existence of prejudice is a question of fact—on "evidence"—which is committed to the discretion of the trial court—to determine to its "satisfaction." For this reason, we hold that "great prejudice" is a question of fact to be reviewed under the clearly erroneous standard.[5]

■ As Ashley argues in his brief, the superior court made no findings regarding the economic prejudice that would result from a partition in kind. Additionally, the record contains little or no evidence regarding the economic feasibility of a partition in kind. While we suspect that partition in kind of a small lot containing an existing structure will generally pose great prejudice to the parties, the current record and the superior court's findings provide no support for this intuition. Thus, we reverse the superior court's order of partition by sale and remand for consideration of the issue of great prejudice.

## IV. ATTORNEY'S FEES

■ The superior court concluded, without explanation, that Baker was "the prevailing party" and that "[s]he may move to recover her attorney fees and costs." This decision is "within the broad discretion of the trial court" and will not be disturbed unless "manifestly unreasonable." *Day v. Moore*, 771 P.2d 436, 437 (Alaska 1989).

■ "As a general rule, ... the 'prevailing party' is considered to be the party who

---

4. *See also Delfino v. Vealencis*, 181 Conn. 533, 436 A.2d 27, 31 (1980); *Patrick v. Preiser*, 73 Misc.2d 639, 341 N.Y.S.2d 806, 808–10 (Sup. 1972) ("[G]reat prejudice" does not "include the possibility of future felonious assaults by one tenant in common against another."); *Schnell v. Schnell*, 346 N.W.2d 713, 716 (N.D.1984).

5. This holding is amply supported by authority from other jurisdictions. *See, e.g., Beebout v. Beebout*, 447 N.W.2d 465, 467 (Minn.App.1989); *Frank DeHaan, Inc. v. Gallatin–Madison Ranch Co.*, 250 Mont. 304, 820 P.2d 423, 426 (1991); *Berg v. Kremers*, 181 N.W.2d 730, 734 (N.D. 1970); *Gillmor v. Gillmor*, 657 P.2d 736, 739 (Utah 1982).

has successfully prosecuted or defended against the action, the one who is successful on the 'main issue' of the action and 'in whose favor the decision or verdict is rendered and the judgment entered.'" *Adoption of V.M.C.*, 528 P.2d 788, 795 n. 14 (Alaska 1974). Recently, in *Hillman v. Nationwide Mutual Fire Ins. Co.*, 855 P.2d 1321 (Alaska 1993), we further elaborated upon the prevailing party requirement. We stated that a plaintiff can be the "prevailing party" though not receiving the full recovery sought if the "plaintiff prevailed on the basic liability question and received an affirmative recovery based on its successful litigation of that question, which was substantial in amount." *Id.* at 1328. The present case offers a similar situation. The "basic liability question" contested by Ashley and Baker was the validity of the deed. Ashley sought to quiet title to a portion of Baker's property and, toward that end, he sought to establish the existence of a valid deed. In her answer, Baker sought, among other things, a "declaratory judgment that ... Ashley ... has no right, title, interest, lien or any other claim relating to" her property. The superior court considered and ultimately rejected Baker's argument that the deed was invalid. Ashley, then, prevailed on this issue. While, as with the plaintiff in *Hillman,* Ashley did not receive all that he sought—he sought one half of 2.5 acres or, alternatively, all of one acre, and received one half of one acre—he did receive a substantial recovery. Thus, we hold that Ashley was the prevailing party in the trial court.

## V. CONCLUSION

We AFFIRM the superior court's interpretation of the deed. We REVERSE the superior court's award of compensation to Baker for Ashley's exclusive use of Cabin C; the superior court's order of partition by sale; and the superior court's award of attorney's fees. The issue of partition is REMANDED for the superior court's consideration of the question of great prejudice. The issue of attorney's fees is also REMANDED for the calculation of an attorney's fees award for Ashley.

BURKE, J., not participating.

COMPTON, Justice, dissenting in part.

The court correctly notes that the superior court determined Baker to be "the prevailing party" without offering any explanation for its conclusion. The court then cites authority which defines "prevailing party" and authority which articulates the standard of review. It then holds that Ashley was the prevailing party as a matter of law.

I am not able to conclude on the record before us that Ashley was the prevailing party as a matter of law. I believe the correct disposition would be to vacate the award of attorney's fees and costs, and remand the issue for redetermination in light of this court's decision. The superior court should be instructed to explain the reasons for its redetermined conclusion.

In all other respects I agree with the opinion of the court.