Michael J. KEENAN, Appellant/Cross-Appellee,

v.

Hugh G. WADE, Appellee/Cross-Appellant.

Nos. S–12437, S–12446.

Supreme Court of Alaska.

May 9, 2008.

Donna C. Willard, Law Offices of Donna C. Willard, Anchorage, for Appellant/Cross–Appellee.

Hugh G. Wade, pro se, Anchorage.

Before: FABE, Chief Justice, EASTAUGH, and CARPENETI, Justices.

*OPINION*

CARPENETI, Justice.

## I. INTRODUCTION

Two tenants in common partitioned their property. After completing partition, they disagreed as to the amount of owelty [1] that was due. The superior court determined the amount owed, and one co-owner appeals, arguing that the superior court overvalued his property. The other co-owner cross-appeals, arguing that the superior court erred in (1) failing to designate a date for valuation of each parcel, (2) using an improper formula to determine owelty, (3) entering a money judgment in the final order, and (4) determining

---

1. "Owelty" is defined as "[e]quality as achieved by a compensatory sum of money given after an exchange of parcels of land having different val-ues or after an unequal partition of real property." BLACK'S LAW DICTIONARY 1137 (8th ed.2004).

that appellant was the prevailing party for purposes of attorney's fees. Because the superior court's valuation of the property was not clearly erroneous and the court did not err in making various other decisions which are challenged by the parties on appeal, we affirm the superior court's decision in all respects.

## II. FACTS AND PROCEEDINGS

### A. Facts

Attorneys Hugh Wade and Michael Keenan co-owned property near Seldovia on the MacDonald Spit. They owned the property as tenants-in-common beginning in 1991, when Keenan purchased the interest of Wade's initial partner, Barrie White. They did not enter into a written agreement concerning their joint ownership.

The property initially consisted of an approximately five-acre tract, on which there was one cabin that had been built in 1978. In 1993 the property was subdivided, and Keenan and Wade sold approximately two and one half acres to third parties. Throughout the first few years of co-ownership, Wade and Keenan shared the cabin that was on the remaining two acres of land. They had agreed in 1991 to construct a guest cabin, but they disagreed on its location. Wade insisted on building the cabin below a bluff, but Keenan believed the location was too close to the high-water mark. Wade had a foundation constructed for the guest cabin below the bluff, but a storm in November 1994 destroyed it.

In 1995 Keenan proceeded to build a separate guest cabin. This cabin has become known to the parties as the "Keenan cabin." Keenan first occupied the new cabin in spring 1995. Thereafter, he never personally used the original cabin, which each party recognizes as the "Wade cabin." From 1991 to the fall of 1999, Keenan maintained a checking account for the tenants-in-common to pay for the mortgage, improvements, and repairs on their property. However, Keenan testified that he personally paid for many of the construction costs for the Keenan cabin. As of May 7, 1999, the parties' de facto separation date, approximately $15,000 of joint funds had been used in construction of the Keenan cabin. Keenan concedes that Wade is entitled to a credit of $7,500 based on those construction costs. Beginning in 1998 Keenan made various additional improvements to the new guest cabin at his own expense.

On May 7, 1999, the parties separated their interests and entered into a de facto partition of the subject property. Utilities were separated, and each party became responsible for the expenses of his respective cabin.

Both before and after the May 7, 1999 de facto separation, the parties struggled to determine the best way to settle their remaining disputes and terminate the partnership. This struggle continued until 2003, when Wade wrote to Keenan stating that he wanted to resolve the matter. Keenan sought the help of Superior Court Judge Mark C. Rowland and requested that he mediate the dispute. At the meeting with Judge Rowland, the parties decided to pursue a formal partition of the property. After the Rowland mediation, the single most important issue was the valuation of the two parcels and payment of any difference.

In April 2004 the parties formally agreed to partition and subdivide the property. Keenan retained the services of McLane Engineering to assist with the partition. McLane officially surveyed and divided the property into two separate lots, with Wade designated the owner of Lot 3A–1 (which includes the Wade cabin) and Keenan designated the owner of Lot 3A–2 (which includes the Keenan cabin). The Wade lot is approximately 49,827 square feet. The Keenan lot is approximately 41,575 square feet. The parties could not agree on the value of those lots or the parties' individual contributions to each lot.

The parties agreed that the lots are not of equal value and that some provision for owelty would be appropriate. Because the parties could not agree as to the appropriate amount of owelty, Keenan filed this lawsuit in November 2004.

## B. Proceedings

Keenan's complaint alleged that Wade refused to cooperate regarding the partition of the land and the payment of owelty. Keenan requested that the court "exercise its equitable jurisdiction and enter a judgment partitioning the property as agreed by the parties, awarding a monetary sum to one party or the other that is fair and equitable under the circumstances, costs, including reasonable attorney fees, and any other relief as to this court deems just." Wade responded by admitting that the parties agreed to partition the property but denying (1) that the parties agreed to a particular formula for calculating the owelty that should be paid by the party receiving the property of greater value and (2) that the parties agreed to hire a real estate appraiser to appraise the properties and determine the necessary amount of owelty. Wade also filed a counterclaim, which appears to seek the same determination as Keenan's complaint and explicitly seeks a provision "for owelty in accordance with A.S. 09.45.590." The counterclaim also seeks resolution of "Keenan's claim for compensation for labor and materials or increased value."

Keenan moved for partial summary judgment on the partition issue, and Wade conceded that the motion should be granted. The superior court entered an order affirming the above-mentioned partition, awarding Lot 3A–2 to Keenan and Lot 3A–1 to Wade.

Upon hearing Keenan's unopposed motion "to establish the law of the case," the superior court ordered:

the measure for valuing property subject to partition shall be determined on the basis of Fair Market Value, and that for purposes of determining the amounts due plaintiff, the Court shall determine:

1. The present FMV of the Lot 3A–1 land and structure, and

2. The present FMV of the Lot 3A–2 land,

3. The amount of any credit the defendant would be entitled to as a result of contribution of partnership funds to the plaintiff's cabin, as offset by the amount of personal funds expended by the plaintiff for partnership expenses.

The most significant determination in this order was the court's decision not to consider the value of the Keenan cabin in its determination of owelty. Instead, the court decided to compare the value of Wade's land and cabin with the value of Keenan's lot without his cabin and simply provide Wade with a credit for the portion of partnership funds expended on Keenan's cabin.

A bench trial commenced on February 7, 2006, and evidence was again taken on February 9, 2006. Both parties testified. Keenan introduced the deposition testimony and appraisal reports of appraiser Mark Webb. In an official appraisal, Webb estimated that the Wade property with the cabin was worth $227,500 as of April 25, 2004. Webb estimated that the value would increase by at least five percent annually, and that it likely had increased by ten percent at the time of trial.[2] In his deposition, Webb also testified about his letter of opinion regarding the Keenan lot, in which he concluded that the lot, without consideration of the cabin, was worth $75,000, based on other sales of vacant sites in the City of Seldovia, near the MacDonald Spit.

Keenan testified that he believed Wade's property with the cabin was worth $260,000, based on "[c]omparable sales, the appraisal, the testimony of ... Mr. Webb and the testimony of Mr. Wade." He estimated that the value of his own property, without the cabin, was $75,000. Keenan explained his calculation of owelty as follows: $260,000 (value of Wade's property, including the cabin) minus $75,000 (value of Keenan's property, not including the cabin he built) = $185,000, divided by two = $92,500 (the amount of owelty Wade would owe Keenan). Keenan explained that he did not seek costs for disproportionate labor, maintenance, or upkeep of his property.

Wade conceded in his testimony that his property, including the cabin, was worth $260,000 at the time of trial. He testified that he believed Keenan's lot, without the cabin, was worth "not less than $150,000."

---

**2.** A ten percent increase would result in a value of $250,250 at the time of trial.

He based his estimate on recent sales in the Seldovia/MacDonald Spit community. Wade did not review the Multiple Listing Service for comparable sales on the MacDonald Spit, but he testified that he was "intimately familiar with every sale that occurred" there in the last year, and he described two such sales. In his deposition, Wade had testified that his lot, without the cabin, was worth between $100,000 and $125,000 and that it was bigger and "sexier" than Keenan's lot. When asked how, given Wade's own testimony regarding the size and attractiveness of his lot, Keenan's lot could be worth "25 to $50,000 more" than Wade's lot, Wade responded that the conversation was about "apples and oranges."

In May 2006 the superior court rendered its written decision and order in the case. The court found that "[t]he best evidence provided at trial establishes the value" of Lot 3A–1 (Wade's property) "at $260,000." The court then addressed the value of Keenan's lot:

> The appraiser's opinion was that the value of Lot 3A–2, without consideration of the "guest cabin" improvement just referred to, to be $75,000. Mr. Wade opined that the property, without building was worth $150,000. The court finds that Mr. Wade's opinion is the better evidence on this subject. It is true that he is not an appraiser and has contempt for them, but his own appraisal—though subject to the risk of bias—seems well based on recent like property transactions.

The court next addressed whether Wade would receive a portion of the value of Keenan's cabin: "Based on the court's ruling on the unopposed motion for a determination of the law of the case Mr. Wade doesn't share

in the value of the Lot 3A–2 improvement." The court did, however, provide Wade with a $7,500 credit for his contribution to the cabin based on Keenan's use of approximately $15,000 of partnership funds. The court calculated the total amount of owelty due to Keenan as $49,454.09.[3]

In June 2006 the court entered judgment in favor of Keenan for $49,454.09. The court denied Keenan's motion for reconsideration. Wade then filed a motion to alter or amend the judgment. He argued that the form of judgment was inappropriate because a money judgment is not appropriate in an action for partition; the money judgment was not in the form required by Alaska Civil Rule 58; the judgment failed to address and resolve material issues before the court; the final judgment should incorporate the March 24, 2005 order granting partial summary judgment; the judgment should resolve and formalize the parties' stipulations and the court's determinations relating to utilities and easements; and the judgment should provide an award of owelty or equitable compensation for disproportionate improvement to the property. Keenan responded and submitted his own proposed amended final judgment.[4] The court accepted Keenan's proposed judgment and officially entered a final judgment of $66,405.13, including pre-judgment interest, attorney's fees, and costs, on August 23, 2006.

Keenan appeals, arguing that the superior court's decision to substitute Wade's valuation of the Keenan lot for that of the appraiser was clearly erroneous. Wade cross-appeals, arguing that the superior court erred in (1) failing to determine the appropriate date for valuation, (2) using an improper

---

3. The calculation was as follows: $260,000 (Lot 3A–1 with improvements) minus $150,000 (Lot 3A–2 without improvements) equals $110,000 (difference in value). As half of the difference in value, $55,000 was the "amount needed to equalize division." The court then subtracted $7,500 for Wade's contribution to the cabin, which resulted in $47,500. Finally, the court added $1,954.09 for the amount Wade owed for taxes and insurance, for a total award to Keenan of $49,454.09.

4. The amended final judgment required the parties to "engage the services of a title insurance

company for the purpose of conducting a real estate closing ... execute grants of easement and a water rights agreement ... [and] execute the appropriate conveyancing documents...." It also required Wade to deposit the total amount of the judgment in escrow "for the purpose of disbursement to [Keenan] before the above referenced documents shall be recorded." "After recordation" the funds were to be "disbursed to [Keenan]." The amended final judgment also included pre-judgment interest, attorney's fees, and costs.

formula to determine owelty, (3) entering a money judgment in the final order, and (4) determining that Keenan was the prevailing party for the purpose of awarding attorney's fees.

### III. STANDARD OF REVIEW

■ Under Alaska Civil Rule 52(a), factual findings shall not be set aside unless they are clearly erroneous. Valuation of property is a factual determination that will be reversed only if clearly erroneous.[5] Under this standard, we will reverse only if we are left with a definite and firm conviction that a mistake has been made.[6] When reviewing factual findings, we view the evidence in the light most favorable to the prevailing party below.[7]

■ We review questions of law using our independent judgment and will adopt "the rule of law that is most persuasive in light of precedent, reason, and policy."[8]

■ We review an award of attorney's fees under Alaska Civil Rule 82 for abuse of discretion.[9]

### IV. DISCUSSION

#### A. The Superior Court's Decision To Use Wade's Estimate of the Value of Keenan's Lot Was Not Clearly Erroneous.

Keenan argues that the superior court's valuation of the Keenan lot was clearly erroneous because it relied on Wade's estimate rather than an expert appraiser's valuation. Wade responds that it is not error to accept a property owner's determination of the value of his or her own property.

■ Keenan reasons that an objective determination of the fair market value of partnership assets is necessary when the parties' relationship is being dissolved, relying on *Disotell v. Stiltner*.[10] In *Disotell*, we held that it was error to permit a buyout of partnership assets "without requiring some objective determination of the value of all of the partnership assets."[11] We emphasized that "[n]either party introduced evidence of any appraisal" or any other evidence of the value of partnership assets.[12] We concluded: "Because a buyout is appropriate only if it is for fair market value, and there was no admissible evidence of fair market value, we must remand."[13] Wade responds that *Disotell* did not create the "requirement that the market value of property be proved by formal appraisal" or even address "whether it is error to reject a professional appraiser's opinion regarding the value of real property in favor of the owner's opinion." We agree with Wade.

Keenan's discussion of *Disotell* fails to recognize that in that case there was no evidence of the value of partnership assets, whereas in this case there was competing evidence of value, including Wade's testimony regarding prices for comparable land sales. In *Disotell*, we simply emphasized the need for objective evidence of the fair market value of partnership assets.[14] We have also held that "[o]wners may express their opinions of an asset's value, but must use a principled method of valuation."[15]

5. *Krize v. Krize*, 145 P.3d 481, 487 (Alaska 2006).

6. *Municipality of Anchorage v. Gregg*, 101 P.3d 181, 186 (Alaska 2004).

7. *Fuller v. City of Homer*, 113 P.3d 659, 662 (Alaska 2005).

8. *Guin v. Ha*, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

9. *See Ashley v. Baker*, 867 P.2d 792, 796 (Alaska 1994) (stating that determination of which party is prevailing party is within broad discretion of trial court and must not be disturbed unless manifestly unreasonable).

10. 100 P.3d 890 (Alaska 2004).

11. *Id.* at 894.

12. *Id.*

13. *Id.*

14. *Id.; see also Martin v. Martin*, 52 P.3d 724, 730–31 (Alaska 2002) (emphasizing the importance of examining a party's motives for valuing a piece of property at a particular amount).

15. *Krize v. Krize*, 145 P.3d 481, 487 (Alaska 2006).

Here, Wade's opinion of the value of Keenan's lot is based on his knowledge of comparable sales of property on the MacDonald Spit. Although Wade did not review the Multiple Listing Service or examine tax appraisal records, he discussed the prices for comparable property sales in the area. First, he testified that the nearby Carr–Agni lot sold for $92,000 in 1997. He stated, "it had a very small A-frame which ... has since been destroyed and ... it sold just for the lot." At a modest five percent annual appreciation, the Carr–Agni lot would be worth approximately $142,722 by the time of trial in 2006. Second, Wade testified about a lot with two small cabins that sold for $200,000 in 2005. According to Wade, the two cabins were "[unheated], uninsulated shacks, no running water, no utilities, no septic." Assuming a modest five percent annual appreciation, the value of the lot would be approximately $210,000 at the time of trial in 2006. These sales, adjusted as necessary for purposes of comparison to the Keenan property, afford an evidentiary basis for Wade's valuation. Thus, the superior court's decision to accept that the value of Keenan's lot in 2006 was $150,000 rather than $75,000 was not clearly erroneous.

■ Keenan also argues that Wade's opinions of value are inadmissible under Rule 701 of the Alaska Rules of Evidence because they do not meet the standards of being "based on the perception of the witness" and "helpful to a clear understanding of his testimony or the determination of a fact in issue." This argument is unavailing, however, because we have held that a property owner's testimony regarding the value of his own land is admissible.[16]

For these reasons, Wade's testimony regarding the value of Keenan's lot is admissible, and the superior court could validly rely on this testimony in determining that Keen-

an's lot is worth $150,000. The superior court found that "Mr. Wade's opinion is the better evidence on this subject" because "though subject to the risk of bias" the valuation "seems well based on recent like property transactions." Because we do not have a "definite and firm conviction that a mistake has been made,"[17] we affirm the superior court's finding that Keenan's lot is worth $150,000.

## B. The Superior Court Correctly Considered the Trial Date as the Appropriate Date for Valuation of the Properties.

■ Wade argues that the superior court erred in failing to determine an appropriate date for valuation of the properties; he also appears to argue that the trial date (February 2006) is the appropriate date. He argues that if February 2006 was selected as the date for valuation, then no owelty should have been assessed because he alleges that the parties agreed that the lots were each worth $260,000 as of the time of trial.[18] Keenan responds that the trial court accepted valuations as of the date of trial.

Keenan is correct that the court valued the property as of the time of trial. In its "Order Granting Motion to Establish Law of the Case," the superior court explained that the amount due to the plaintiff would be based on the "present FMV [fair market value]" of each lot. The superior court stated in its order that "[t]he best evidence provided at trial establishes the value of [Wade's property, including the cabin] at $260,000." The finding that Keenan's lot was worth $150,000 was also based on trial testimony about the value of the lot at the time of trial. Thus, although the superior court did not explicitly state the date of valuation, it is clear that the values were determined as of the time of

16. *Gregory v. Padilla*, 379 P.2d 951, 953 (Alaska 1963) ("owner's opinion of the value of his property is competent even though it may not be very persuasive").

17. *Municipality of Anchorage v. Gregg*, 101 P.3d 181, 186 (Alaska 2004).

18. Wade's argument ignores the fact that the superior court's's assessment of owelty was based

on a comparison of Keenan's lot without improvements (determined to be $150,000) and Wade's lot with the original cabin (determined to be $260,000). The basis for this comparison is the court's order establishing the "Law of the Case," which Wade failed to oppose. Because there was a $110,000 difference in the property values considered by the superior court, the court did not err in providing for an award of owelty.

trial. The superior court did not err by using the time of trial as the valuation date.

### C. Wade Waived His Argument that the Superior Court Used an Improper Formula To Determine the Appropriate Amount of Owelty Because He Failed To Raise the Issue Before the Superior Court.

■ Wade argues that the superior court adopted an improper formula to determine owelty. He argues that the formula was simplistic and not supported by authority or precedent. Specifically, Wade argues that the formula is improper because it credited Keenan with "one hundred percent of the value of the improvements which had been made on his lot regardless of the source" and because it did not require "any accounting by Mr. Keenan of the joint funds which he controlled and which were expended on his cabin during the five-year period from 1994 to 1999." Keenan responds that the superior court "did not err in adopting a formula for resolution which excluded the value of Keenan's improvements." Specifically, Keenan argues that the superior court credited Wade with one-half of the amount of partnership funds that had been expended on the Keenan cabin and that the court possesses the power to enter "any order necessary to accomplish a just and equitable partition."

■ Wade failed to oppose the formula at issue when it was introduced by Keenan's pre-trial motion to establish the law of the case. The court's order on that motion determined that Wade would not share in the value of the improvements to Keenan's lot and that Wade's improvements to his own cabin would not entitle him to a credit. Wade did not object to the order or seek reconsideration in a timely manner. Generally, a party's failure to file a timely opposition to a motion results in waiver of the right to object on appeal unless there is plain error.[19] Plain error exists where "an obvious mistake has been made which creates a high likelihood that injustice has resulted."[20]

Here, Wade failed to file any opposition to the motion to establish the law of the case. Further, the formula the court adopted took into account both the "credit [Wade] would be entitled to as a result of contribution of partnership funds to [Keenan]'s cabin" and "the amount of personal funds expended by the plaintiff for partnership expenses." Thus, the superior court did not make an obvious mistake in adopting the formula. Wade's argument that the formula is improper is therefore waived.

### D. The Superior Court Did Not Err in Entering a Money Judgment Against Wade.

The superior court accepted Keenan's proposed amended final judgment and entered an order on the judgment on August 23, 2006. The amended final judgment ordered the parties to "engage the services of a title insurance company for the purpose of conducting a real estate closing," to "execute grants of easement and a water rights agreement in the form submitted by the plaintiff attached to his opposition to the defendant's Motion to Alter or Amend the Judgment," and to "execute the appropriate conveyancing documents." The judgment also ordered the defendant to deposit the total amount of judgment ($66,405.13) in escrow before all the documents were recorded. After recordation, the funds were to be disbursed to the plaintiff.

■ Wade argues that the form and substance of the judgment are fatally flawed. Specifically, he argues that the judgment does not partition the property, but rather improperly directs the parties to engage a title insurance company and create an escrow of funds. Wade also argues that the judgment fails to "confirm the agreement regarding easements and utilities" and constitutes a money judgment, which he alleges is improper. Keenan responds that partition was performed by the parties' agreement, that the cases cited by Wade do not support his argu-

---

**19.** *See Kenai Peninsula Borough v. Cook Inlet Region, Inc.,* 807 P.2d 487, 500 (Alaska 1991); *see also Carroll v. Carroll,* 903 P.2d 579, 583 (Alaska 1995).

**20.** *Kenai Peninsula Borough,* 807 P.2d at 500 (quoting *Miller v. Sears,* 636 P.2d 1183, 1189 (Alaska 1981)).

ment for an alternative to a money judgment, that there was already agreement on the easements and utilities issue, and that Wade's argument against use of an escrow agent is left unexplained.

Wade's argument that the superior court failed to partition the property ignores the court's "Order on Motion for Partial Summary Judgment" of March 24, 2005. In that order, the court partitioned the property in accordance with Plat 2004–6, awarding the plaintiff Lot 3A–2 and awarding the defendant Lot 3A–1. Thus, transfer of title was the only remaining act that had to be completed in order to effectuate the partition. The use of a title insurance company assists with the title transfer process ("conducting a real estate closing"). Wade fails to indicate why the use of a title insurance company is improper, so we do not consider this argument.[21]

■■■ Wade's argument that a money judgment is inappropriate in this case presents an issue of first impression in Alaska. There is no definitive rule as to whether a money judgment can be granted for owelty or whether owelty may only be awarded by charging a lien on the share of greater value.[22] To support his argument that a money judgment is inappropriate, Wade cites *Updike v. Adams*[23] and *Pino v. Sanchez.*[24] In *Updike,* the Supreme Court of Rhode Island held that payment of owelty may not be "so imposed upon a party as to be unreasonably burdensome, *considering both the condition of the property and the party.*"[25] The *Updike* court also stated, "[w]here one is unable to make payment at the time of division, it should be a charge or lien upon his share, and a reasonable time should be given for the payment."[26] In *Pino,* the New Mexico Supreme Court held that the trial court had erred in allowing a deferral of owelty payment until an indeterminate future date, and

explained that a reasonable time for payment must be set by the trial court.[27] The rule in *Updike* provides a sound approach to the issue of whether owelty should be imposed as a money judgment or a lien on the property of greater value because it takes into account the difficulty co-owners may have in satisfying large money judgments. The *Pino* rule is also wise because it ensures that co-owners who are entitled to owelty will receive their fair share within a reasonable time.

■■■ Here, Wade filed a "Motion to Alter or Amend Judgment" and attached an affidavit in which he described why he believed it would be unreasonably burdensome to impose owelty as a money judgment. He stated:

> The existing judgment orders immediate payment of [$49,454.09]. The ten day stay of execution will expire on June 30, 2006 and comes at a time when I am short of liquid assets. I recently bought a new condominium and have just moved to it. My former residence, a condo is listed for sale, but has been on the market for just a few days. I have no mortgage on either condo, and also have no mortgage on the subject property in Seldovia. However, I did just negotiate an unsecured bridge loan from FNBA to purchase the new condo and I do not expect that the bank will loan me addition [sic] money on an unsecured basis at this time.
>
> . . . I can and will, if necessary, draw money to pay the owelty from a retirement account, but that will have adverse tax consequences. I think that, under the appropriate authority the court should fix a time for payment not less than six months from this date, or should provide for terms such as I have suggested in my proposed form of judgment.

---

**21.** *See Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991) (stating "where a point is given only a cursory statement in the argument portion of a brief, the point will not be considered on appeal").

**22.** *See* 59A Am.Jur.2d *Partition* §§ 177–79 (2008).

**23.** 24 R.I. 220, 52 A. 991 (1902).

**24.** 98 N.M. 150, 646 P.2d 577 (1982).

**25.** 52 A. at 992 (emphasis added).

**26.** *Id.*

**27.** 646 P.2d at 578–79.

Wade's affidavit fails to show that it is unreasonably burdensome, considering the "condition of the property and the party," to impose owelty as a money judgment. Wade appears to have various assets, including real property and a retirement account that could be used to satisfy the judgment. It is not unreasonably burdensome to require him to make a one-time payment. Thus, the superior court did not err by entering a money judgment against Wade.[28]

▇▇ Finally, Wade argues that the superior court erred by failing to "confirm the agreement regarding easements and utilities." Aside from this cursory statement, Wade provides no argument on this point in his brief. Thus, we do not consider the argument on appeal.[29] Even if we did consider the argument, it has no merit because Wade and Keenan already agreed to an access easement, view easement, and shared water rights, and the court had no duty to "confirm" their agreement.

### E. The Superior Court Correctly Determined that Keenan Was the Prevailing Party for Purposes of Alaska Civil Rule 82 Attorney's Fees.

▇ Wade argues that the superior court erred by determining that Keenan was the prevailing party for purposes of attorney's fees. Wade argues that he should have been designated as the prevailing party because

he prevailed on what he considers the most important issue at trial: valuation of the property. He also reasons that Keenan cannot be designated as the prevailing party because the judgment he was awarded is substantially less than the amount of his Alaska Civil Rule 68 settlement offer.

▇ Alaska Civil Rule 82(a) provides that the prevailing party shall receive attorney's fees.[30] The trial judge has wide discretion as to whether attorney's fees should be awarded.[31] We may find an abuse of discretion only if the trial court's determination as to attorney's fees was *manifestly unreasonable*.[32] The prevailing party is the party who has "successfully prosecuted or defended against the action, the one who is successful on the main issue of the action and in whose favor the decision or verdict is rendered and the judgment entered. The determination of who is the 'prevailing' party is within the broad discretion of the trial court."[33] Furthermore, "a plaintiff can be the 'prevailing party' though not receiving the full recovery sought if the 'plaintiff prevailed on the basic liability question and received an affirmative recovery based on its successful litigation of that question, which was substantial in amount.' "[34]

The superior court's decision to award Keenan attorney's fees in the amount of $8,243.67[35] is not manifestly unreasonable.

28. Wade also argues that the superior court erred by providing for "an escrow of funds." This argument is waived because Wade's brief fails to provide more than a cursory statement explaining the basis for the argument. *See Adamson v. Univ. of Alaska,* 819 P.2d 886, 889 n. 3 (Alaska 1991).

29. *See id.*

30. Wade implies that Rule 82 attorney's fees should not be awarded in partition cases, and he cites AS 09.45.620 to support his position. That statute does not support his argument because it concerns the costs of partition, not attorney's fees required by litigation. Further, the statute states that when litigation arises between "some of the parties" to the partition, "the court *may* require the expenses of the litigation to be paid by any or all the parties to the litigation." AS 09.45.620 (emphasis added). This language reinforces the wide discretion the superior court possesses to award attorney's fees.

31. *Cooper v. Carlson,* 511 P.2d 1305, 1309 n. 5 (Alaska 1973).

32. *Id.* at 1309 n. 6 (emphasis added).

33. *Day v. Moore,* 771 P.2d 436, 437 (Alaska 1989) (internal quotation omitted) (citation omitted); *see also Ashley v. Baker,* 867 P.2d 792, 796–97 (Alaska 1994).

34. *Ashley,* 867 P.2d at 797 (quoting *Hillman v. Nationwide Mutual Fire Ins. Co.,* 855 P.2d 1321, 1328 (Alaska 1993)).

35. This amount is calculated based on the judgment, including pre-judgment interest, of $57,436.61 and the "contested with trial" schedule of Rule 82(b)(1). This schedule provides for an attorney's fee award of twenty percent of the first $25,000 of the judgment (including pre-judgment interest) and ten percent of the next $75,000 of the judgment. Alaska R. Civ. P. 82(b)(1).

The main issues in this action were the amount of owelty owing to Keenan and the property values considered in the owelty calculation. As the superior court stated in its order of May 22, 2006, "[t]he heart of the parties' dispute is whether Mr. Wade is to share in the value [of] the structure built as the 'guest cabin' [Keenan's cabin]." Keenan was successful on this issue because the court determined that Wade would not share in the value of the improvements to Keenan's lot. Although Keenan did not receive the full recovery he sought,[36] he still prevailed on the issue that was the "heart of the parties' dispute" and received a substantial recovery of $57,436.61 (including pre-judgment interest). Thus, it was well within the superior court's wide discretion to determine that Keenan was the prevailing party and award him Rule 82 attorney's fees.

## V. CONCLUSION

For the reasons stated above, we AFFIRM the superior court's judgment in all respects.

BRYNER and MATTHEWS, Justices, not participating.

---

**36.** Wade notes that Keenan offered to settle for $75,000 in a Rule 68 offer of judgment and thereafter sought $94,000 in settlement. But in order to benefit under Rule 68, Wade would have had to have made an offer that he subsequently bettered at trial. Alaska R. Civ. P. 68(b). Moreover, while obtaining less than his offer, Keenan nonetheless obtained a substantial money judgement and prevailed on important issues in the case.