**Eleanor OAKES, Appellant,**

v.

**David and Sine HOLLY, Appellee.**

No. S–14030.

Supreme Court of Alaska.

Jan. 20, 2012.

Peter A. Sandberg, Wuestenfeld & Corey, Anchorage, for Appellant.

Stuart C. Rader, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Appellees.

Before: CARPENETI, Chief Justice, FABE, WINFREE, CHRISTEN, and STOWERS, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

Eleanor Oakes owns a 7/8 undivided interest in a 20–acre parcel of land in Council, while David and Sine Holly own a 1/8 undivided interest in the property. The parties went to court to partition the property, and each agreed to submit up to three partition proposals for the court's selection after it heard evidence about the choices. The superior court selected one of Oakes's proposals, and Oakes hired a surveyor to implement the division of the property.

The survey revealed a significant error in the map presented to the superior court of the selected proposal. The error resulted in the Hollys acquiring more river frontage than Oakes had intended in the proposal selected by the superior court. Oakes moved to amend the proposal, but the Hollys urged that the selected proposal be implemented as surveyed. The superior court concluded that under the doctrine of mutual mistake, Oakes bore the risk of the drafting mistake in her proposals, and it enforced the proposal with the drafting error. But because the error in the property description did not occur in the formation of contract, we conclude that the doctrine of mutual mistake is inapplicable. Instead, the error occurred during the evidentiary hearing and formed a mistaken factual premise for the trial court's decision. We therefore remand to the superior court to determine whether it is appropriate to grant relief for mistake under Alaska Civil Rule 60(b), and if so, to repartition the property in compliance with AS 09.45.290.

## II. FACTS AND PROCEEDINGS

The property at issue in this case is a 19.353–acre patented placer claim located in Council. The southern edge of the property is bordered by the Niukluk River. Eleanor Oakes owns a 7/8 undivided interest in the property while David and Sine Holly own a 1/8 undivided interest. Each party has a cabin on the property.

On December 19, 2008, Oakes filed a complaint for judicial partition in the superior court. The parties agreed that the property should be partitioned in kind; that the value of the property should be based on the raw land, without regard to improvements made on the property or any potential mineral deposits; and that each party should receive the land surrounding its own cabin. They further agreed that each party would submit up to three partition proposals to the superior court and that the superior court's decision would be limited to selecting from among the six proposals.

Each side submitted three partition proposals. The proposals differed chiefly over how much property should be awarded to the Hollys and where that property should be located. Because of the land's topography, some parts of the property are worth more than others. Specifically, according to the Hollys' expert, the size, topography, amount of water frontage, and availability of road access all increase the relative value of a given proposal. Prior to trial, Oakes stated that "[d]ue to the location of the Hollys' cabin [near the river], both sides agree that the Hollys will receive at least half of the useable riverfront."

The Hollys' proposals reflected their desire to retain not only the land immediately surrounding their cabin, but also all of the land

that had historically been used by their family under a lease agreement with the previous owners, prior to Oakes and the Hollys purchasing their respective interests in the property. The Hollys suggested that if such a partition resulted in the Hollys receiving more than 1/8 the value of the land, Oakes should receive owelty.[1] Oakes responded that the Hollys' proposals would award the Hollys all of the most valuable land, while taking none of the less valuable land; that the Hollys' proposals would unfairly restrict Oakes's access to the usable river frontage; and that the land should be partitioned without resorting to owelty because owelty is disfavored.[2] Oakes agreed to waive owelty if any of her proposals were selected, even if those proposals resulted in the Hollys receiving more than 1/8 of the land's value.

On July 13, 2009, after an evidentiary hearing considering the parties' arguments and testimony about the relative value of the partition proposals, the superior court selected Oakes's "Partition Proposal 1" as the most equitable, in compliance with AS 09.45.290. Oakes's Proposal 1, as represented at the hearing, awarded the Hollys approximately 2.4 acres of property starting from the west side of their cabin and stretching east to the eastern border of the property across the bank of Melsing Creek. Although this parcel contained approximately 1/8 (12.5%) of the property's acreage, the Hollys' appraiser testified that it was the most valuable of the six proposed parcels, containing about 15% of the property's value.[3] In selecting this proposal, the superior court made findings in support of its choice:

> This proposal denies the [Hollys] access to all the land that was historically used when Harland Holly [the Hollys' father] was leasing, but provides some recompense due to the larger size and additional

waterfront. Also, the size of the resultant lot most closely reflects one-eighth of the larger parcel. David Holly testified that the portion of the waterfront closer to Melsing Creek more regularly floods and that a ditch to the east of the [Hollys'] present cabin is muddy. However, according to the unrebutted testimony of [Oakes's son], there are mine tailings contained within this option that may be able to alleviate some or all of the problem.

Selection of this option also avoids issues of possible right of way encroachment for a gravel roadway that goes from the river beach to a community road. It also avoids the necessity of making any owelty adjustment. According to the testimony of the [Hollys'] expert witness, this proposal is more valuable than any other and would require some payment to [Oakes]. However, [Oakes] has specifically disclaimed any such payment.

Oakes arranged for a surveyor to implement the partition. Once the survey was conducted, however, it became clear that Oakes's Proposal 1, as surveyed, differed from the visual depiction of Oakes's Proposal 1 presented to the superior court. This was the result of two errors made by Oakes's counsel when drawing Proposal 1: first, Oakes's counsel drew the southeast corner of the property further east than it is actually located, and second, the visual depiction of the boundary lines did not accurately represent the written dimensions. The effect of these errors was that Oakes's Proposal 1, as surveyed, awarded the Hollys less total acreage than represented to the superior court (approximately 1.9 rather than 2.4 acres) but gave the Hollys much more of the desirable river frontage west and uphill of their cabin.

Throughout July and August 2009, the parties attempted to negotiate a solution to the

---

1. Owelty refers to "[e]quality as achieved by a compensatory sum of money given after an exchange of parcels of land having different values or after an unequal partition of real property." BLACK'S LAW DICTIONARY 1214 (9th ed. 2009).

2. *See* AS 09.45.590 ("When it appears that partition cannot be made equal between the parties according to their respective rights, without prejudice to the rights and interests of some of them, and a partition is ordered, the court may adjudge

compensation to be made by one party to another on account of the inequality."); *see also* 59A AM JUR 2D *Partition* § 175 (2011) ("The equalization of a partition by the award of owelty should not be resorted to where it is possible to make a fair and equitable division without it.").

3. The Hollys' appraiser estimated the total value of the property to be $58,000 and the value of Oakes's Proposal 1 to be $8,700.

mistake in the proposal, but this effort was unsuccessful. The parties returned to the superior court, and Oakes requested that the superior court adopt a revised partition consistent with the outline of Proposal 1 as originally drawn on the photo and presented to the court. Alternatively, Oakes suggested that an award of owelty be made to account for the error if the court were to enforce the flawed proposal. Oakes argued that her Proposal 1 as surveyed did not reflect the superior court's earlier factual findings and that enforcing the drafting error would give the Hollys the valuable river frontage west and uphill of their cabin that the superior court intended to award to Oakes. The Hollys responded that the superior court should either award them Oakes's Proposal 1 as surveyed or select one of the Hollys' original proposals. The Hollys argued that Oakes bore the risk of mistake in drafting her proposals and that the drafting error should be enforced.

On March 15, 2010, the superior court issued an order enforcing Oakes's Proposal 1 as surveyed despite the error. The superior court found that "[Oakes's] proposal seems to have differed in outline drawn on the photo of the site from its depiction in dimensions." The superior court recognized that, because the parcel awarded to the Hollys was smaller as surveyed than as depicted in the proposal, "if [the Hollys] had sought some type of reformation, the court would likely have granted it." The superior court then went on to analyze the drafting error under the doctrine of mutual mistake.

The superior court viewed the parties' agreement to provide three proposals to the court as a contract. The superior court then determined that the fact that the proposals did not accurately represent the property due to the mistaken location of the southeastern corner was a mutual mistake of fact that related to a basic assumption of the contract and had a material effect on the agreed-upon exchange. While the superior court found that both parties believed the location of the corner to be further eastward than the survey ultimately found, the superior court concluded that Oakes, the party requesting relief, was responsible for and bore the risk of mistake under the doctrine of "conscious ignorance" due to Oakes's decision to use cheaper and less accurate methods to create the proposals. Oakes's attorney conceded that he had drawn the maps himself, using Google Earth images, a ruler, and a calculator. In contrast, the Hollys hired a surveyor and used aerial maps to derive their proposals. In oral argument before us, Oakes's attorney admitted that his mistake was more significant than any mistake the Hollys may have made.

On July 23, 2010, Oakes filed another motion asking the superior court to select Oakes's Proposal 1 as intended by Oakes and requested the court stay enforcement of a judgment pending an appeal. On September 7, 2010, the superior court issued a final judgment partitioning the property in accordance with Oakes's Proposal 1 as surveyed.

## III. STANDARD OF REVIEW

 We will not set aside a trial court's factual findings in a partition action unless those findings are clearly erroneous.[4] Factual findings are only clearly erroneous if we are "left with a definite and firm conviction that a mistake has been made."[5] "We review questions of law using our independent judgment and will adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[6] "Interpretation of an agreement between parties is a question of law to which we apply our independent judgment."[7]

## IV. DISCUSSION

### A. The Doctrine of Mutual Mistake Is Not Applicable To The Drafting Error.

The superior court concluded that the parties' agreement to submit up to three parti-

---

4. *Keenan v. Wade,* 182 P.3d 1099, 1105 (Alaska 2008).

5. *Id.*

6. *Id.* (internal quotation marks omitted).

7. *Brotherton v. Warner,* 240 P.3d 1225, 1228 (Alaska 2010).

tion proposals each, and to limit the superior court's selections to the universe of the six proposals, was a contract. The Hollys argued that the drafting error should be analyzed under the doctrine of mistake, and the superior court agreed. Although the parties' agreement to submit up to three proposals may have been in essence a partial settlement contract, we conclude that the doctrine of mutual mistake is not applicable because the drafting error was not a mistake that related to the formation of that contract.

■ Partitions can be accomplished through either a voluntary partition or an involuntary partition.[8] Voluntary partitions are accomplished through contracts; the parties agree to mutually convey certain parts of the property to one another.[9] Involuntary partition actions are known as judicial partitions.[10] Judicial partitions are governed by AS 09.45.290, which provides that "upon the requisite proofs being made, the court shall order a partition according to the respective rights of the parties as ascertained by it." Here, the parties agreed to a judicial partition under AS 09.45.290.

Based on the modified procedure agreed upon by the parties, the superior court issued an order, on March 13, 2009, regarding procedures that memorialized the agreement to "offer up to three separate proposals" and clarified that "there would be an evidentiary hearing" during which the parties would "present evidence" after which the court would "select one of the proposals." Under the agreement the superior court was re-quired to choose from among proposals submitted by the parties.

■ The superior court analyzed the discovered drafting error in Oakes's Proposal 1 under the doctrine of mutual mistake and ultimately allocated the risk of mistake to Oakes. The doctrine of mutual mistake is a means of rescinding or reforming a contract, but the doctrine is inapplicable here.[11] Under the doctrine of mutual mistake, "[w]hen the parties to an agreement share a mistaken belief about a material fact, the agreement may be voidable."[12] We have adopted the three requirements set forth in the Restatement (Second) of Contracts for determining when a mutual mistake makes a contract voidable:

> The party seeking to void the contract must prove that (1) *the mistake relates to a basic assumption on which the contract was made*, (2) the mistake has a material effect on the agreed exchange of performances, and (3) the party seeking relief does not bear the risk of the mistake.[13]

■ Here, the superior court found that both parties were mistaken about the location of the southeastern corner of the property, explaining that both parties believed "that the larger parcel had a corner which was on the east side of Melsing Creek."[14] But this mistake, which was reflected in Oakes's Proposal 1, did not relate to a basic assumption of the parties' agreement to adopt procedures for resolving the litigation. Indeed, the contract was already fully formed when the drafting error was presented to the supe-

8. 4 THOMPSON ON REAL PROPERTY §§ 38.02, 38.03 (David A. Thomas ed., 2d ed. 2004).

9. *Id.* § 38.02.

10. *Id.* § 38.03(a)(1).

11. *See* RESTATEMENT (SECOND) OF CONTRACTS § 152 (1981) ("When Mistake Of Both Parties Makes A Contract Voidable"); RESTATEMENT (SECOND) OF CONTRACTS § 155 (1981) ("When Mistake Of Both Parties As To Written Expression Justifies Reformation"); *see also Old Harbor Native Corp. v. Afognak Joint Venture*, 30 P.3d 101, 108 (Alaska 2001) (discussing the requirements for reformation of a contract based on mutual mistake); *Stormont v. Astoria Ltd.*, 889 P.2d 1059, 1061 (Alaska 1995).

12. *Stormont*, 889 P.2d at 1061.

13. *Id.* (citing RESTATEMENT (SECOND) OF CONTRACTS § 152 cmt. a (1981)) (emphasis added, internal quotation marks omitted).

14. The Hollys maintain that "[t]here is no evidence that the Hollys made a mistaken assumption concerning the location of the southeast corner of the parcel." It is unclear how this proposition would be helpful to them since the Hollys maintain that the doctrine of mutual mistake should inform our analysis. Nevertheless, while the superior court found that the mistake was "mutual," at oral argument before us Oakes's counsel admitted that the error in Oakes's proposal was more significant because the Holly error in "distance is not quite so far" as that of Oakes.

rior court. The essentials of the contract were articulated by the superior court in its March 2009 procedural order: The court would hold an evidentiary hearing at which evidence would be presented, each side would submit up to three separate proposals, and after the hearing the court would select one of the proposals.

There was no mistake regarding any of these basic provisions of the contract, or the factual premises upon which the agreement was based. Rather, the drafting error occurred nearly three months after adoption of the procedural agreement when Oakes's attorney, using inadequate tools, drafted and submitted the proposals on June 8, 2009.[15] After Oakes's Proposal 1 was chosen, the resulting survey revealed a mismatch between the actual parcel and the parcel intended by the superior court.

■ As Oakes argues, the error in this case casts doubt on the balancing of interests performed by the superior court when it chose Oakes's Proposal 1. In choosing Oakes's Proposal 1, the trial court reasoned that it was the best option, even though the Hollys would be forced to give up their "historical" use of the land, because "the size of the resultant lot most closely reflects [the Hollys'] one-eighth [interest]," through its "larger size and additional waterfront" and this proposal "avoids issues of possible right of way encroachment. . . ." This decision was premised on incorrect information supplied to the superior court. As a result, the superior court's findings no longer match its partition of the property. Although the parties reached an agreement as to the procedure to be used to present the right to a partition to the trial court, they did not waive their equi-

table rights under AS 09.45.290. Because the doctrine of mutual mistake is inapplicable, the allocation of risk of the mistake to Oakes is not dispositive of the outcome.

## B. The Parties May Be Entitled To Relief Under Civil Rule (60)(b)(1).

■ The question whether to grant relief from drafting errors is commonly addressed by courts under Alaska Civil Rule 60(b). Rule 60(b)(1) permits a court to relieve a party from a judgment for "mistake, inadvertence, surprise, or excusable neglect." While "Alaska case law does not clearly pinpoint which claims for relief are properly cognizable under Rule 60(b)(1) . . . it appears that when a party is seeking relief due to the movant's mistake or neglect the claim falls under Rule 60(b)(1); but when the parties are mutually mistaken the claim falls under Rule 60(b)(6)."[16] As the superior court found, the mistake in this case had a "material effect" upon the outcome of the case. The superior court's original findings that the Hollys would have a parcel with less river frontage but of a larger size, and that the partitioned lots would reflect the relative values of the owners' shares, seem to conflict with the newly surveyed, smaller parcel that allocated more waterfront to the Hollys.

In an unpublished decision, we upheld the superior court's modified property division in response to a Rule 60(b) motion for relief because of a mistaken property boundary and a mistaken belief about the requirements for subdivision at trial.[17] Other courts have also considered requests for relief from mistakes made in surveyed parcels through a Rule 60(b)(1) analysis.[18] Oakes requested

15. Notice of Filing Proposed Judicial Partitions, *Oakes v. Holly*, Case No. 2NO–08–316 CI, June 8, 2009.

16. *Richard v. Boggs*, 162 P.3d 629, 635 (Alaska 2007) (citing *Williams v. Crawford*, 982 P.2d 250, 255 (Alaska 1999)).

17. *See Eckert v. Eckert*, Mem. Op. & J. No. 534, 1991 WL 11657781, at *1–3 (Alaska, Feb. 20, 1991).

18. *See Scureman v. Judge*, No. C.A. 1486–S, 1998 WL 409153, at *4 (Del.Ch. June 26, 1998) (finding negligence in challenging the error negated

the Rule 60(b)(1) claim brought to remedy a survey error); *Martin v. Schaad*, No. 02CA65, 2004 WL 57408, at *5 (Ohio App., Jan. 8, 2004) ("assuming the . . . contentions are correct that the boundary line contained in the survey that the court adopted does not follow the eastern edge . . . then such an error is a 'mistake' within the meaning of Civ. R. 60(B)(1)"); *Kunzler v. O'Dell*, 855 P.2d 270, 274–75 (Utah App.1993) (finding "evidence was later found to be erroneous, making the factual description of the legal ruling incorrect" to be a cognizable claim under Rule 60(b)); *Ryan v. Harris*, No. 16910-0-II, 1998 WL 546117, at *3 (Wash.App., Aug. 28, 1998) (finding untimeliness foreclosed relief un-

relief from the trial court's order based upon her counsel's drafting mistakes and because the superior court's findings in support of its partition order no longer matched the reality of the surveyed partitioned parcel. The superior court has not yet had an opportunity to review this question under Civil Rule 60(b). We remand to the superior court for consideration whether relief from the partition order should be granted. It will be up to the superior court to determine whether to invite other proposals from the parties or to revise the partition based on the evidence already submitted.

We make one last observation: The superior court expressed understandable concern about the discrepancy in effort and cost between the two parties given Oakes's use of inferior tools and methods. Oakes's drafting error has already caused considerable delay. But this concern can be addressed through the award of costs and attorney's fees if the superior court deems a fee award appropriate.[19]

## V. CONCLUSION

The doctrine of mutual mistake does not apply to the drafting error in Oakes's Proposal 1. We remand to the superior court to determine whether the judgment can be set aside under Rule 60(b)(1), and if so, to partition the property in compliance with AS 09.45.290.

---

der a 60(b) claim brought to remedy an incorrect survey).

**19.** *See Gregor v. Hodges,* 612 P.2d 1008, 1010 (Alaska 1980) (finding that after granting a 60(b) motion for mistake, the nonmoving party should be paid reasonable costs and attorney's fees); *see also Hertz v. Berzanske,* 704 P.2d 767, 773 (Alaska 1985), *partially overruled by statute as recog-* *nized by McConkey v. Hart,* 930 P.2d 402, 407 n. 4 (Alaska 1996) (finding that "using the court's equitable powers" the costs of witnesses and attorney's fees could have been reimbursed to the nonmoving party of an overturned default judgment under a good cause standard of Civil Rule 55(e)).